Opinion issued May 17,
2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-01035-CR

———————————

walter lee V. mccreary, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 178th District
Court

Harris County, Texas



Trial Court Case No. 1227912

 



MEMORANDUM OPINION

          Walter Lee V. McCreary was certified
to stand trial as an adult for the felony offense of capital murder.[1]
A jury found him guilty, and the trial court assessed punishment at confinement
for life. In his sole issue on appeal, McCreary contends that the trial court
erred by failing to suppress his oral statements obtained in violation of the
Family Code. We affirm.  

Background

          Officers from the Webster Police Department
(WPD) responded to a report of a shooting at the Nasa
Liquor Store. They discovered the body of the store owner, Thanh
Pham, in a pool of blood behind the store’s counter and a nearly empty cash register.
Pham died from gunshot wounds to his head, torso, and upper extremity. Police
recovered .45 caliber shell casings, a bullet fragment, and latent fingerprints
from inside the store. Three of the fingerprints lifted from the store’s
counter belonged to McCreary. A firearms identification expert determined that
the shell casings and bullet fragments could only have come from a limited
number of firearms, including a Taurus brand .45 semiautomatic pistol.  

          When Joseph Rock, a Webster-area
resident, learned of Pham’s death, he informed WPD that he had shopped at the
liquor store shortly before the shooting. As he pulled into the store’s parking
lot, Rock observed a young man wearing a light gray or white hoodie and blue
shorts outside of the store listening to an I-Pod. The young man was in the same
location when Rock left the store after making his purchases. Rock identified
McCreary in a photo array. 

          Having no other suspects and also having
received two anonymous tips about McCreary’s involvement in Pham’s death, WPD Detectives
Quintana, Palermo, and Latham made contact with McCreary, then 15 years-old, at
his mother’s home. There, police recovered a pair of blue shorts and an I-Pod.
According to McCreary’s mother, McCreary wore the blue shorts on the day of
Pham’s death. Although it was his opinion that probable cause did not yet exist
to arrest McCreary, Detective Latham asked McCreary to make a voluntary
statement at the police station. Detective Latham informed McCreary that he was
“not being placed under arrest . . . not being charged with the crime. And that
he’s going to be able to leave whenever he wants and that [the detectives
would] be glad to give him a ride back.” Both McCreary and his mother
consented. 

Due to the cold weather, the detectives suggested that
McCreary bring some warm clothing to the police station. McCreary responded:
“Let me get my white hoodie -- I mean, my black hoodie[.]”
McCreary sat in the front passenger seat of the detectives’ vehicle on the way
to the police station. He was not handcuffed or restrained. He inquired en
route whether the detectives’ service weapons were “four fives.”  

At the police station, Detective Latham reaffirmed that McCreary
was still free to leave at any time, and, without answering any questions, McCreary
asked to leave. McCreary walked out of the police station’s back door, jumped a
fence, and “shot” the detectives his “middle finger.” 

          The next day, McCreary telephoned
police and requested a second opportunity to give a voluntary statement.
Detectives Quintana and Palermo picked McCreary up from his home. This time, however,
McCreary’s mother was not there. En route to the police station, McCreary again
sat in the front passenger seat of the detective’s vehicle without handcuffs or
other restraints. 

Detective Latham took McCreary to an interview room and shut
the door. Just as he did the day before, Detective Latham began the interview
by asking McCreary whether he was at the police station of his own free will
and whether he understood that he was not under arrest. McCreary responded
affirmatively, and no admonishments were given. Detective Latham characterized
the one-hour interview that followed as “an intense interview, a tactical
interview” during which McCreary laughed, cried, got angry, and made
incriminating statements about the amount of money stolen from the store and
the manner in which Pham was shot. The interview was video-recorded. Although Detective
Latham exaggerated the evidence and repeatedly accused McCreary of murdering
Pham, Detective Latham never expressed an intent to
arrest McCreary. And, when McCreary indicated he was ready to leave, Detective Latham
did not arrest McCreary. Instead, he and Detective Quintana gave McCreary a
ride home. 

          The State accepted a capital murder
charge against McCreary at a time when he was being held in a juvenile
detention facility on an unrelated aggravated assault charge. Detectives
Palermo and Quintana retrieved McCreary from the juvenile detention center and
transported him to another facility for the purpose of entering his
fingerprints in the Automatic Fingerprint Identification System (AFIS). McCreary
did not receive any admonishments. While the detectives were processing
McCreary’s information, McCreary observed a deputy walking by and stated, “You
got a chrome .45, man, that’s nice.” The detectives returned McCreary to the
juvenile detention center. 

          Over the course of the eight-day trial
on guilt-innocence, the State presented physical evidence and the testimony of
twenty-one witnesses, including the investigating officers, medical and
forensic experts, and Rock. McCreary’s classmate, Edwin Alfaro, testified that,
within one or two weeks of Pham’s death, McCreary bragged about shooting Pham
and taking money from the store. The State also presented evidence that Craig Lindhorst, McCreary’s acquaintance, had stolen a Taurus
brand .45 semiautomatic pistol and sold it to
McCreary.  

          McCreary filed pre-trial motions to
suppress his oral statements made during the video-recorded interview
(the “recorded statements”) and his oral statement, during fingerprinting,
complimenting the deputy’s .45 caliber service weapon (the “unrecorded
statement”), contending that
the statements were obtained in violation of provisions of the Family Code
governing statements by a juvenile. After hearing testimony and argument at
trial, the trial court denied the suppression motions and admitted McCreary’s
statements into evidence.

Admissibility of
Statements by a Juvenile

          “A motion to suppress is nothing more
than a specialized objection to the admissibility of evidence.” Simmons v. State, 288 S.W.3d 72, 76−77
(Tex. App.—Houston [1st Dist.] 2009, pet. ref’d). McCreary argues that the trial court
erred by admitting his recorded and unrecorded statements because they were
custodial statements taken in violation of sections 51.095, 52.02 and 52.025 of
the Family Code. See Tex. Family Code Ann. §§ 51.095 (West 2008) (governing admissibility of
statements by juvenile), 52.02 (West 2008) (governing taking of juvenile into
custody), 52.025 (West 2008) (governing designation of juvenile processing
office). Specifically, with respect to the oral statements
recorded during his interview with Detective Latham, McCreary asserts that
Detective Latham violated the Family Code by (1) conducting the interrogation
at the Webster police station instead of a juvenile processing office as
required by sections 52.02 and 52.025 and (2) failing to have a magistrate give
McCreary the statutory warnings required by sections 51.095(a)(1)(A)
and 51.095(a)(5). With respect to his unrecorded statement—“you got a chrome .45, man, that’s
nice”—McCreary
asserts that sections 51.095(a)(1)(A) and 51.095(a)(5)
likewise preclude its admission in evidence because he made the statement while
in custody, he made the statement in response to “conversational interaction”
with Detective Palermo, and he was not given any statutory admonishments by a
magistrate. We disagree that the provisions of the Family Code precluded the
admission of McCreary’s statements in evidence.

I.       Standard
of Review

          We review the trial court’s ruling on a
motion to suppress the statement of a juvenile under the same abuse of
discretion standard as a motion to suppress the statement of an adult in a
criminal proceeding. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); In re D.J.C., 312 S.W.3d 704, 711 (Tex.
App.—Houston [1st Dist.] 2009, no pet.). When, as here, the trial court
makes factual findings, we determine whether the evidence, when viewed in the
light most favorable to the trial court’s ruling, supports those findings. State v. Iduarte,
268 S.W.3d 544, 548 (Tex. Crim. App. 2008). At a suppression hearing,
the trial court is the sole judge of the credibility of the witnesses and the
weight to be given their testimony. Cantu v. State, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991). We
give great deference to the trial court’s determination of historical facts. Iduarte, 268 S.W.3d at 548; In re
D.J.C., 312 S.W.3d at 711. Mixed
questions of law and fact that turn on the credibility and demeanor of a
witness are reviewed under the almost-total-deference standard; however, mixed
questions of law and fact that do not turn on the credibility and demeanor of a
witness are reviewed de novo. Iduarte, 268 S.W.3d at 548; In re D.J.C., 312 S.W.3d at 711. If
the trial court’s ruling is correct under any theory of law applicable to the
case, the ruling will be sustained. Iduarte, 268 S.W.3d at 548; In re D.J.C., 312 S.W.3d at 711.

II.      Custodial Interrogation of a Juvenile 

           Because McCreary was a juvenile at the time of his arrest,
the provisions of the Family Code control certain issues involving his
substantive rights. Roquemore v. State, 60 S.W.3d 862, 866 (Tex.
Crim. App. 2001); Comer v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997) (noting that “issues involving substantive
rights of pre-transfer juveniles, such as legality of detention or a
confession, though raised in a criminal forum,” are governed by applicable
provisions of Family Code). “The
Family Code seeks to strike a balance between the competing interests of public
safety and child welfare. This balance is struck in part by limiting the
investigative function of the police.” Roquemore, 60 S.W.3d at 872 (citing Comer, 776 S.W.2d at 193, 196). Evidence obtained in violation of the
applicable provisions of the Family Code must be suppressed. See Tex.
Code Crim. Proc. Ann. art.
38.23(a) (West 2005) (“No evidence obtained by an officer or other person in
violation of any provisions of the Constitution or laws of the State of Texas .
. . shall be admitted in evidence against the accused on the trial of any
criminal case.”); see also Jeffley v. State, 38 S.W.3d 847, 854 (Tex. App.—Houston
[14th Dist.] 2001, pet. ref’d) (observing that
unlawfully obtained statements are inadmissible against juvenile in criminal
proceedings treating juvenile as adult).  

          The admissibility of custodial
statements made by a juvenile is governed by section 51.095 of the Family Code.
See Tex.
Family Code Ann. § 51.095.
Subsection 51.095(a)(5) provides that a juvenile’s oral statement is admissible
if these conditions are satisfied: (1) the statement is made while the child is
in the custody of an officer, in a detention facility or other place of
confinement, or in possession of the Department of Family and Protective
Services; (2) the statement is recorded by an electronic recording device; and (3)
at some time before making the statement, “the child is given the warning
described by Subdivision (1)(A) by a magistrate, the warning is part of the
recording, and the child knowingly, intelligently, and voluntarily waives each
right stated in the warning.”[2]
Id. § 51.095(a)(5). A juvenile’s oral statement made as a
result of custodial interrogation without the benefit of a magistrate warning
is inadmissible at trial. See id. §
51.095(a)(5), (b)(1); see also Tex. Code Crim. Proc. Ann. art.
38.22 §§ 2, 3 (West 1979 & Supp. 2000). But “[a]
statement of a juvenile that is not the product of custodial interrogation is
not required to be suppressed by section 51.095[.]” In re D.J.C., 312 S.W.3d at 712 n.1; see Meadoux v. State, 307 S.W.3d 401, 408
(Tex. App.—San Antonio 2009), aff’d on other grounds,
325 S.W.3d 189 (Tex. Crim. App. 2010) (“A voluntary oral statement by a
juvenile that does not stem from custodial interrogation is admissible, even if
the juvenile did not receive the statutory admonishments.”).  

Custodial interrogation is questioning that is initiated by
law enforcement after a person has been taken into custody or otherwise
deprived of his freedom in any significant way. See Stansbury v. California, 511 U.S.
318, 322, 114 S. Ct. 1526, 1528 (1994); In
re D.J.C., 312 S.W.3d at 712 (addressing whether juvenile was in custody
for purpose of determining admissibility of confession in juvenile delinquency
proceeding). “A custodial interrogation occurs when a defendant is in custody
and is exposed ‘to any words or actions on the part of the police . . . that
[the police] should know are reasonably likely to elicit an incriminating
response.’” Roquemore,
60 S.W.3d at 868 (quoting Rhode Island v.
Innis, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689−90 (1980)). A juvenile is in custody
if, under the objective circumstances, a reasonable child of the same age would
believe his freedom of movement was significantly restricted. Jeffley, 38 S.W.3d at 855.  

Our analysis involves two steps. In re D.J.C., 312 S.W.3d at 712.
First, we determine whether there was a formal arrest or restraint of movement
to the degree associated with an arrest by examining all of the circumstances
surrounding the interrogation. Stansbury, 511 U.S. at 322, 114 S. Ct. at 1528−29; In
re D.J.C., 312 S.W.3d at 712. This determination focuses on the
objective circumstances of the interrogation, not on the subjective views of either
the interrogating officers or the person being questioned. Stansbury, 511 U.S. at 322, 114 S. Ct. at 1528−29; In
re D.J.C., 312 S.W.3d at 712. “[T]he restriction upon freedom of
movement must amount to the degree associated with an arrest as opposed to an
investigative detention.” Dowthitt v. State, 931 S.W.2d 244, 255 (Tex.
Crim. App. 1996). 

Second, we consider whether, in light of the circumstances, a
reasonable person would have felt that he was at liberty to terminate the
interrogation and leave. In
re D.J.C., 312 S.W.3d at 712. Courts have traditionally considered
four factors in making this determination: (1) whether probable cause to arrest
existed at the time of questioning; (2) the subjective intent of the police;
(3) the focus of the investigation; and (4) the subjective belief of the
defendant. Id. Because the custody
determination must be based upon the objective circumstances, however, the
subjective intent of both the interrogating officers and the person being
questioned is irrelevant except to the extent that intent is manifested in
words or actions. Id. 

A juvenile may be in custody when he is interrogated alone by
an armed police officer in an enclosed space. See In re D.J.C., 312 S.W.3d at 713; see also In re D.A.R., 73 S.W.3d 505, 511−12 (Tex. App.—El Paso 2002, no pet.).
Being the focus of an investigation alone does not amount to being in custody. Meek v. State, 790 S.W.2d
618, 621 (Tex. Crim. App. 1990). Neither does stationhouse questioning,
in and of itself, constitute custody. Dowthitt, 931 S.W.2d at 255. When the circumstances show that an
individual acts upon the invitation or request of the police and there are no
express or implied threats that he will be forcibly taken, that person is not
in custody. Dancy v. State, 728 S.W.2d 772, 778−79 (Tex. Crim. App. 1987); In re D.J.C., 312 S.W.3d at 713.
“The mere fact that an interrogation begins as non-custodial, however, does not
prevent it from later becoming custodial; police conduct during the encounter
may cause a consensual inquiry to escalate into custodial interrogation.” Dowthitt, 931 S.W.2d at 255. 

Four general situations may constitute custody: (1) when the
suspect is physically deprived of his freedom of action in any significant way,
(2) when a law enforcement officer tells the suspect that he cannot leave, (3) when
law enforcement officers create a situation that would lead a reasonable person
to believe that his freedom of movement has been significantly restricted, or
(4) when there is probable cause to arrest and law enforcement officers do not
tell the suspect that he is free to leave. See id.; In re D.J.C., 312 S.W.3d at 713. 

McCreary relies on the fourth situation. The existence of
probable cause, in and of itself, does not establish that a suspect is in
custody. Dowthitt,
931 S.W.2d at 255. Custody requires that the law
enforcement officer’s knowledge of probable cause be manifested to the suspect.
See id. “Such manifestation could
occur if information substantiating probable cause is related by the officers
to the suspect or by the suspect to the officers.” Id. Additionally, other circumstances must lead a reasonable person
to believe that he is under restraint to the degree associated with an arrest. Id. 

          When a juvenile is taken into custody,
Section 52.02 of the Family Code applies. In re D.J.C., 312 S.W.3d at 715.
Section 52.02(a) provides, in relevant part, that a person taking a juvenile
into custody must immediately bring that juvenile to a designated juvenile
processing office or perform one of several other enumerated acts. Tex. Family Code Ann. § 52.02(a). A failure on the
part of law enforcement to comply with the requirements of section 52.02 may
render a statement obtained from a juvenile inadmissible. See In re U.G., 128 S.W.3d 797, 799 (Tex. App.—Corpus Christi 2004,
pet. denied) (holding juvenile’s statement inadmissible when, after being
placed in custody, police took juvenile to police station and held juvenile in
area where adult suspects were being held instead of taking juvenile “to a
juvenile processing office or any of the places listed as an alternative” in
section 52.02).       

A.      The recorded statements

          The trial court determined that the
recorded statements made by McCreary during his interview with Detective Latham
were admissible because the statements did not arise from custodial
interrogation. The trial court further concluded that probable cause to arrest
McCreary did not exist at the time he gave the recorded interview and that,
under the circumstances of the interview, no reasonable fifteen-year-old would
have felt that he was not free to terminate the interview. In reaching these
conclusions the trial court made the following fact findings on the record: (i) on the first day detectives made contact with McCreary,
McCreary voluntarily went to the police station with the consent of his mother;
(ii) McCreary only stayed at the police station for a short while, having been
informed that he was not under arrest; (iii) McCreary left the police station
on his own accord; (iv) the next day, McCreary initiated further contact with
detectives by telephone and asked for a second opportunity to give a statement,
(v) having been on probation in juvenile court before, McCreary was a “worldly
15-year-old” familiar with arrest procedures; (vi) McCreary voluntarily gave
the recorded interview; (vii) McCreary concluded the interview “with words that
he was done”; and (viii) McCreary asked for and received a ride home following
the interview. Because the evidence adduced at the
suppression hearing (i.e., the videotaped interview and Detective Latham’s
testimony regarding its circumstances), viewed in the light most favorable to
the trial court’s ruling, supports the trial court’s findings, we afford the
findings almost total deference. See Iduarte, 268 S.W.3d at 548; In
re D.J.C., 312 S.W.3d at 711.

Applying the first
part of our analysis, we examine all the circumstances surrounding McCreary’s
interview with Detective Latham to determine whether there was a formal arrest
or restraint to the degree associated with an arrest. See In re D.J.C., 312 S.W.3d at 712. It is undisputed that McCreary was
never handcuffed and was not formally arrested until well after the interview;
in fact, immediately after the interview, the detectives gave McCreary a ride
home. McCreary twice agreed to accompany the detectives to the police station
and make a statement. En route to and from the police station, McCreary rode in
the front passenger seat of the detective’s vehicle, not in the back seat of a
marked patrol vehicle. Before making any statement, McCreary was told more than
once that he was not under arrest and was free to leave at any time. On both
days McCreary was at the police station, the detectives placed him in an
interview room and shut the door. Nonetheless, on the detective’s first attempt
to question McCreary, McCreary asked to leave. The detectives permitted him to exit
both the interview room and the police station unhindered. On the second day,
McCreary endured one hour of questioning before he stopped the interview on his
own accord. The detectives again permitted McCreary to leave the police station
unhindered. Based on all the objective circumstances surrounding the interview,
the trial court reasonably could have concluded that McCreary was not under
formal arrest nor restrained of freedom to the degree associated with an arrest
at the time he made the recorded statements. 


Turning to the second
part of our analysis, we consider whether a reasonable fifteen-year-old in the
same circumstances as McCreary would have felt free to terminate the interview
and leave. See id. In making this
determination, we look first to the objective factors of the existence of
probable cause to arrest McCreary and the focus of the detectives’
investigation and then to the detectives’ and McCreary’s subjective intents as
manifested by their words and actions. Id.
Detective Latham testified that there was limited evidence of McCreary’s
involvement in Pham’s death at the time of the interview—specifically, two
anonymous tips about McCreary, a witness who placed McCreary at the store
shortly before the shooting, and clothing and an I-Pod recovered from
McCreary’s home. Detective Latham acknowledged, however, that McCreary was the
only suspect in Pham’s death. 

As to his subjective
intent, Detective Latham testified that he did not believe that probable cause
existed to arrest McCreary either before the interview commenced or after
McCreary made incriminating statements. Although Detective Latham accused
McCreary of capital murder more than once during the interview, his words and
actions during the interview were consistent with a subjective intent not to
arrest McCreary. Detective Latham told McCreary during the interview that an
arrest would not be made until there was a stronger case. Detective Latham
never handcuffed or restrained McCreary, and Detective Latham permitted
McCreary to freely leave the police station upon his request. As to the
subjective beliefs manifested by McCreary’s words and actions, the record
demonstrates that McCreary acknowledged he was making his statement
voluntarily, he was not under arrest, and he was free to leave. Each time
McCreary asked to leave the police station, the detectives permitted him to do
so. Nothing in the record demonstrates that McCreary felt he was not free to
withdraw his agreement to answer Detective Latham’s questions. 

Considering all the
circumstances and the weight of the four traditional factors, we conclude that
a reasonable fifteen-year-old in the same situation as McCreary would have felt
free to terminate the interview and leave. 
We therefore hold that the trial court was within its discretion in
concluding that McCreary was not in custody at the time he made his recorded
statement; consequently, the provisions of the Family Code governing the taking
of a juvenile into custody and the admissibility of custodial statements by a
juvenile do not apply.  See Meadoux, 307 S.W.3d at 408. Because the provisions of the Family Code
do not apply, McCreary’s recorded statement was admissible in evidence. The
trial court did not abuse its discretion by denying McCreary’s motion to
suppress the recorded statement.

B.      The unrecorded statement

Regarding McCreary’s unrecorded statement—“you got a chrome .45, man, that’s
nice”—the
trial court made a critical fact finding: “the statement made was spontaneous
and not the result of any questioning.” McCreary disagrees on
appeal that the statement was spontaneous because “the State’s proffer during
the hearing outside the presence of the jury [established] that there was a
conversational interaction between [Detective] Palermo and [McCreary] prior to
[McCreary’s] statements about the deputy’s firearm.” The standard by which we
must review the trial court’s denial of McCreary’s motion to suppress, however,
requires us to give almost total deference to the trial court’s finding of
historical fact when that finding is supported by the record. See Roquemore, 60 S.W.3d at 868. And, here,
the record supports a finding that the statement was made spontaneously. According to Detective
Palermo’s testimony at the suppression hearing, McCreary was detained in a
juvenile detention facility on unrelated charges for two days before the State
accepted the capital murder charge arising from Pham’s death. Detectives Palermo
and Quintana received instructions to process McCreary on the new charge and
add his fingerprints to AFIS. While the detectives were processing McCreary, a
Harris County Deputy Sheriff walked by with a service pistol, and McCreary,
without prompting from either detective, stated “you got a chrome .45, man, that’s nice.” Because “[a]
statement of a juvenile that is not the product of custodial interrogation is
not required to be suppressed by section 51.095[,]” we hold that the trial
court did not abuse its discretion by denying McCreary’s motion to suppress the
unrecorded statement. See In re D.J.C.,
312 S.W.3d at 712 n.1.  

Conclusion

          Having determined that the
trial court did not err by refusing to suppress McCreary’s recorded and
unrecorded statements to police, we overrule his sole issue on appeal. The
trial court’s judgment is affirmed.

 

 

Harvey Brown

Justice

 

Panel consists of Justices Bland, Massengale, and
Brown.

 

Do not publish. Tex.
R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann. §
19.03(a)(2) (West 2011).

 





[2]
          The warnings required to be given by section 51.095(a)(1)(A) are as
follows: 

 

(i)               
the
child may remain silent and not make any statement at all and that any
statement that the child makes may be used in evidence against the child; 

 

(ii)            
the
child has the right to have an attorney present to advise the child either
prior to any questioning or during the questioning; 

 

(iii)          
if the
child is unable to employ an attorney, the child has the right to have an
attorney appointed to counsel with the child before or during any interviews
with peace officers or attorneys representing the state; and 

 

(iv)          
the child has the
right to terminate the interview at any time[.]

 

Tex. Family Code Ann. § 51.095(a)(1)(A).