

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1341-07

---

### THE STATE OF TEXAS

### v.

### JORGE R. IDUARTE, Appellee

---

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

---

**JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, PRICE, WOMACK, HOLCOMB and COCHRAN, JJ., joined. KEASLER and HERVEY, JJ., concurred.**

### OPINION

Appellee, Jorge R. Iduarte, appeals the ruling of the Second Court of Appeals that reversed the trial court's decision to suppress all evidence of an alleged aggravated assault on a peace officer.[1]

*State v. Iduarte,* 232 S.W.3d 133 (Tex. App.–Fort Worth 2007). We affirm the ruling of the court of appeals.

---

[1] A person commits an offense if the person intentionally or knowingly threatens another with imminent bodily injury. TEX. PENAL CODE § 22.01(a)(2); A person commits an offense if the person commits assault as defined in § 22.01 and the person uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE § 22.02(a)(2).

**FACTS**

On November 22, 2001, at approximately 3:15 a.m., a call to 911 reported gunshots and a man and a woman arguing in a Fort Worth neighborhood. Police officers Travis Eddleman and David De Leon were dispatched to the Fossil Ridge Apartments. When they arrived, they saw what appeared to be two men and a woman arguing. One man was identified as appellee, and the other as appellee's coworker, Bacilio Leyva. The woman was identified as Yasamin Iduarte, appellee's wife. Both officers testified that appellee appeared to be agitated and angry, while Mr. Leyva was calm, and Ms. Iduarte was crying and screaming.

Because the 911 call reported gunshots and possible domestic violence, Officer Eddleman drew his weapon and held it at his side. Officer De Leon conducted a pat-down search of the two men. Officer De Leon instructed the two men to get on their knees and to hold their hands on top of their heads; Leyva complied immediately, but appellee had to be told several times before he complied. Officer De Leon determined that neither man had a weapon. At that point, he began to question them, while Officer Eddleman questioned Ms. Iduarte.

Officer Eddleman testified that Ms. Iduarte had several red marks around her neck and chest area and that she had a hard time speaking because of her upset state. Ms. Iduarte reported that she had been assaulted, but said that she did not want to talk about it. Officer Eddleman then asked her if she knew anything about the gunshots. She quickly glanced at appellee and then told Officer Eddleman that she "was not going to talk about that."

Ms. Iduarte did tell Officer Eddleman that she wanted the keys to a truck parked at the

apartment complex so that she could leave.[2] She told the officers that there were two sets of keys to the pickup truck and she needed both sets.[3] Officer Eddleman instructed her to wait in her personal vehicle while they retrieved the keys. When Officer Eddleman asked appellee about the keys, appellee said that he had one set on his person, but the second set might be upstairs.[4] Officer Eddleman suggested that he and appellee go up to the apartment to retrieve the second set of keys. Appellee stated that there was no electricity in the apartment. Officer Eddleman responded that he had a flashlight.

Midway up the stairs, appellee began to run. Because there had been a report of shots being fired, Officer Eddleman pursued him. By the time he caught up to appellee, appellee was already inside the apartment, standing at the dining-room table with his back to the door. Officer Eddleman shined his flashlight on appellee, and appellee turned and began to walk towards him. Appellee then stopped and reached with his right hand to grab a board used to hang keys. He showed the officer

---

[2] On direct examination, Officer Eddleman testified that Ms. Iduarte told him that she was test-driving the truck and that it had to be returned to the dealership. However, when questioned by defense counsel on cross-examination, Officer Eddleman confirmed that he stated in the police report that she had purchased the truck for appellee to drive and that she wanted the truck back.

[3] Ms. Iduarte told the officer that Mr. Leyva would be driving the truck away from the apartment because appellee was intoxicated.

[4] The testimony of Officers Eddleman and De Leon varied regarding the second set of keys. Officer Eddleman testified that appellee firmly asserted that the second set of keys were in his apartment and, at that point, appellee stood up and voluntarily begin to walk towards the stairs.

Officer De Leon testified that, when asked about the second set of keys, appellee stated that he did not know where the keys were, but maybe they were in his apartment. De Leon testified that appellee asked Officer Eddleman if he would like to go check and Officer Eddleman replied that he would. De Leon stated that appellee told Officer Eddleman that there was no electricity in the apartment and Officer Eddleman replied that he had a flashlight, so they could go get the keys together.

the key holder and stated that he did not have the other keys after all.[5] They both went back outside.

As he was leaving the apartment, Officer Eddleman noticed an empty holster and a gun case on the stairway landing.[6] Officer Eddleman said to appellee, "I thought you didn't have a gun," and appellee replied, "I don't." Appellee attempted to open the case, but Officer Eddleman stopped him and opened the case himself. It was empty. At some point while on the stairway landing, Officer Eddleman told appellee that he was under arrest for public intoxication.[7] Officer Eddleman asked appellee repeatedly about the gun, and appellee started clenching his fists. Officer De Leon noticed that appellee was becoming agitated, so he started walking up the stairs. Officer Eddleman testified that appellee shouted, "You want the gun? I will show you the gun."[8] Appellee then turned and ran back into the apartment towards the dining-room table. Officer Eddleman followed him inside.

Officer Eddleman testified that he shone the flashlight on appellee, saw appellee reach over a chair and straighten with a revolver in his hand, heard the hammer cock, saw appellee turn towards him with the gun pointed at Eddleman's face, and "could see directly down the barrel." Officer Eddleman testified that he then dropped to one knee and shot appellee twice in the abdomen.[9] In

---

[5] Officer De Leon testified that, after appellee informed Officer Eddleman that he did not have the keys, Officer Eddleman said, "You do have [the] keys." Officer De Leon said that appellee reiterated that he did not have the keys and began to get upset.

[6] Officer De Leon testified that it was after Officer Eddleman repeatedly accused appellee of having a gun that Eddleman noticed the empty holster and the gun case on the landing.

[7] Officer De Leon also testified that Officer Eddleman told appellee, "Right now I have you for public intoxication. I'm going to do a shots fired report."

[8] At the suppression hearing, Officer De Leon initially testified that appellee said, "You want the gun? I will get you the gun." On cross examination, however, the defense attorney refreshed the officer's memory by showing him the police report. In the report, Officer De Leon stated that, when asked about the gun, appellee stated "Here it is, here it is. I am going to shoot myself."

[9] Officer De Leon testified that, when appellee picked up the gun, Officer Eddleman's body started to shake, he shouted out an expletive, turned his flashlight off, laid on his stomach, and fired.

contrast, Officer De Leon, who was then in the doorway, testified that appellee cocked the gun while pointing it at his own head and threatened to shoot himself.

Following the shooting, Officer De Leon rushed to restrain appellee. He testified that appellee continued to struggle with him, and that he had to strike appellee in the ribs to control him. Officer De Leon testified that, while he was on top of appellee, appellee continuously stated, "I'm sorry, I forgive you." Appellee was transported to the hospital and treated for gunshot wounds. The state charged him with aggravated assault on a peace officer for pointing the gun at Officer Eddleman.[10]

Before trial, appellee filed a motion to suppress, arguing that the Fort Worth police department had violated his federal and state constitutional rights and Article 38.23 of the Texas Code of Criminal Procedure because the officers lacked probable cause to enter his apartment. After a hearing, the trial court held that appellee's constitutional and statutory rights were violated. The court concluded that appellee did not consent to Officer Eddleman's entry into the apartment on the first entry, but merely acquiesced to the officer's display of authority. The court further held that the second entry into appellee's dwelling was not based on exigent circumstances or for a community care-taking function. In its findings, the trial court stated that Officer Eddleman's second entry circumvented the law and the Constitution by creating his own exigent circumstances. Consequently, based on its findings of fact and conclusions of law, the trial court granted appellee's motion to suppress the evidence of the assault on Officer Eddleman. The state appealed to the Second Court of Appeals, and that court reversed the trial court's ruling. *Iduarte,* 232 S.W.3d at

---

[10] At the suppression hearing, Officer De Leon testified that the initial offense report, drafted by another officer, inaccurately stated that Officer De Leon observed appellee point the gun at Officer Eddleman. However, Officer De Leon changed the report to state that he did not see appellee point the gun at Officer Eddleman.

140. Appellee petitioned for discretionary review in this Court.

## STANDARD OF REVIEW

When reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Id.* at 818-19. We review the trial court's legal ruling *de novo*. We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *See St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (quoting *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003)); *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

We afford a great deal of deference to a trial judge's rulings on questions of historical fact, and also on rulings that both apply the law to facts and turn on an evaluation of credibility and demeanor. *See Ross*, 32 S.W.3d at 856. Nonetheless, mixed questions of law and fact may be reviewed *de novo* when they do not depend on credibility or disputed facts. *Guzman,* 955 S.W.2d 85, 89 Tex. Crim. App. 1997). This case presents mixed questions of law and fact, and we will therefore review the trial court's findings of fact and conclusions of law *de novo.*

## ANALYSIS

The trial court entered detailed findings of fact and conclusions of law. In its conclusions of law, the trial court stated,

> Keep in mind Officer Eddleman stated the Defendant pointed a weapon directly at him; Officer De Leon testified the Defendant was threatening to shoot himself . . .. The State points out that case law holds that if evidence of the Defendant's new crime was not obtained by the officer's unlawful conduct, then it cannot be suppressed. The motion points out the absurdity of a policy that bars the prosecution

of one who shot and killed a police officer following an arguably improper traffic stop. Just as absurd is allowing police officers to circumvent the law and the Constitution by creating their own exigent circumstances, resulting in the shooting of a person in his own home. This case below boils down to the credibility of Officer Eddleman. . . . It defies common sense that if you have probable cause to arrest an individual for public intoxication, you allow that individual, knowing there has been a report of assault and gunshots fired, to roam, unhand cuffed, back into a unlighted, dark apartment where you suspect a weapon is located . . ..

This Court has recognized the trial court's role during a suppression hearing and has repeatedly emphasized the deference that the trial court is due. *Id.* The trial court has provided a detailed analysis as to why the motion to suppress was granted. If in this case we had been asked to determine whether an unlawful search and seizure occurred, then the trial court's ruling would stand. However, this is not such a case. Here we are asked to determine whether evidence of an offense alleged to have occurred after an unlawful search should be suppressed.

Appellee argues that the Fourth Amendment of the United States Constitution and Article 38.23 of the Texas Code of Criminal Procedure require that evidence obtained as the direct or indirect consequence of an illegal arrest, search, or seizure be suppressed. Appellee asserts that the court of appeals created a bright-line test for exclusion by holding that the "Texas exclusionary rule only applies to evidence of a crime committed before an unlawful search and seizure, and not to evidence of a crime committed thereafter." Appellee also asserts that the court of appeals misapplied the *Mayorga* line of cases by mechanically applying the "new crime" exception despite the lack of any finding, or even any credible evidence, that any new crime occurred.

The state argues that the evidence was not obtained in violation of the law, therefore its suppression was not required. *See State v. Mayorga,* 901 S.W.2d 943, 945 (Tex. Crim. App. 1995);

*see also Martinez v. State*, 91 S.W.3d 331, 340 (Tex. Crim. App. 2002).[11] Assuming, *arguendo*, that the trial court properly concluded that the officer's entry into appellant's dwelling was illegal, we must determine, by evaluating the facts of the case and considering the totality of intervening circumstances, whether any taint from the improper entry has been purged. *See generally Taylor v. Alabama*, 457 U.S. 687 (1982).

In *Mayorga*, the defendant was in a minor traffic accident near her home. *Mayorga,* 901 S.W.2d at 944. Police officers discovered that the defendant had outstanding warrants for her arrest. *Id.* When the officers attempted to arrest her, she resisted. *Id.* After taking the defendant to jail, the officers realized that they were mistaken about the warrants, but the defendant was still charged with resisting arrest. *Id.* Before trial, appellee moved to suppress all evidence relating to her arrest, contending that it should be excluded under Article 38.23 of the Code of Criminal Procedure.[12] *Id.* The trial court granted the motion, but the court of appeals reversed. *See State v. Mayorga,* 876 S.W.2d 176 (Tex. App.–Dallas 1994).

In our opinion affirming the court of appeals, we stated that

'[o]btained in violation of the law' under Tex. Code Crim. Proc. Ann. art. 38.23 contemplates that a crime has been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the previously

---

[11] In *Martinez,* the defendant was indicted for aggravated perjury. Before trial, he moved to have the evidence of his perjured statement suppressed because the state did not orally warn him of his rights. The trial court granted the suppression motion, but the court of appeals reversed. On appeal to this Court, we held that

the perjured utterance is not evidence of or testimony about a crime, but is the very crime itself. The corpus delicti of the crime of perjury is not merely evidence of some pre-existing crime that might be subject to suppression under art. 38.23. A state official's failure to implement or abide by certain statutory requirements does not accord protection to the person who thereafter lies under oath.

*Martinez v. State*, 91 S.W.3d at 340.

[12] This was the defendant's second trial; the first one ended in a mistrial.

> committed crime. Thus, the officers must act illegally in obtaining existing evidence of an offense. Therefore, where the officers, as in the instant case, arrest a person based on objectively reasonable information, and that person resists the arrest, the evidence of the resistance is not obtained in violation of the law as art. 38.23 contemplates, and therefore, the exclusionary rule is not applicable. Excluding the evidence in a case such as this would have no other result than to stymie a police officer in carrying out his duties in the future.

*Mayorga*, 901 S.W.2d at 946.[13]

This case is similar. We have long held that the "fruit of the poisonous tree" doctrine, explained at length in *Wong Sun v. United States*, 371 U.S. 471 (1963), serves to exclude as evidence not only the direct products of Fourth Amendment violations, but also the indirect products. *Armstrong v. State*, 550 S.W.2d 25, 31 (Tex. Crim. App. 1976). Evidence is not classified as a fruit requiring exclusion, however, merely because it would not have been discovered "but for" the primary violation. *Id.; Wong Sun,* 371 U.S. at. 471. "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Armstrong,* 550 S.W.2d at 31 (quoting *Wong Sun,* 371 U.S. at. 488)).

Appellee was indicted for an offense that took place after the allegedly illegal entry into his apartment by a state agent. Although the trial court found that the officer's actions overstepped the limits of his authority, such a violation does not justify a subsequent assault by appellee. If appellee did point the gun at Officer Eddleman, that act constituted an independent criminal offense

---

[13] As we stated in *Martinez, Mayorga* is a plurality decision that is not binding on this Court; four judges joined the majority opinion, four concurred in the decision , and one judge did not participate. *Martinez v. State*, 91 S.W.3d at 340. "[T]o the extent that the reasoning, *albeit dicta*, expressed in *Mayorga* may be relevant to the reasoning set out in other cases, it may be cited for that reasoning, despite its non-binding character." *Id.*

committed after the complained-of entry, and the acquisition of evidence of the independent offense was not causally connected to the officer's allegedly illegal entry. *See, e.g., Sweeten v. State,* 667 S.W.2d 779, 781 (Tex. Crim. App. 1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 600-604 (1975)).

The exclusionary rule was designed to protect individuals from the use at trial of evidence that was obtained in an unlawful manner. *See Wong Sun*, 371 U.S. at 486. It does not, however, provide limitless protection to one who chooses to react illegally to an unlawful act by a state agent. *Id.* If that were allowed, the genuine protection that the exclusionary rule provides would be undermined.[14] Here, evidence of the charged offense did not exist before the officer's challenged actions because the charged offense had not yet occurred; the evidence showed a subsequent independent criminal act that was not causally connected to any unlawful entry by a state agent. Therefore, the exclusionary rule does not apply to this case.

Appellee further asserts that the court of appeals erred because the state failed to prove that a new crime took place and that, in a review of a suppression hearing, appellate courts must give almost total deference to the trial court's findings on witness credibility that are supported by the record.[15] *See generally Ross*, 32 S.W.3d at 856 (appellate courts should afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the

---

[14] In *Martinez*, we stated as follow:

> Appellee's argument, carried to its extreme logical conclusion, would provide legal protection to the murderer of a police officer, who proves that the officer detained him without articulable suspicion prior to the murder. Under appellee's theory, evidence of that killing would have to be suppressed under article 38.23 because the murder occurred after and because of the officer's initial 'illegal' conduct. That theory is not the law.

*Martinez*, 91 S.W.3d at 340.

[15] Appellee argues that the state could not prove one of the elements of the crime: that appellee pointed the gun at the officer.

11

trial court's fact findings are based on an evaluation of credibility and demeanor). Appellee also contends that the trial court ruled that Officer Eddleman lacked credibility regarding his assertion that appellee pointed the gun towards him and that the court of appeals erred in "unseating the trial court as the sole fact finder on a motion to suppress." The state argues that, if the trial court has the power to suppress the testimony related to a crime simply because it does not believe that testimony, then the trial court has become the juror, which this Court has forbidden. *See Woods v. State,* 153 S.W.3d 413 (Tex. Crim. App. 2005).

A suppression hearing is for limited purposes. *Id.* In *Woods*, we held that the statutes authorizing pre-trial proceedings do not contemplate a "mini-trial" on the sufficiency of the evidence to support an element of the offense. *Woods*, 153 S.W.3d at 415; *see also Lawrence v. State*, 240 S.W.3d 912, 916 (Tex. Crim. App. 2007). The purpose of a pre-trial motion is to address preliminary matters, not the merits of the case. *Woods*, 153 S.W.3d at 415. Preliminary matters are those issues that can be resolved before there is a trial on the merits of the case. *Id.* The pivotal issue here, whether appellee pointed the gun at Officer Eddleman, is an element of the offense itself. Such an issue cannot be decided by the trial court during a pre-trial hearing. *Id.*

From the record, Officer Eddleman's credibility could be seen as suspect. Nonetheless, the grand jury indicted appellee for aggravated assault, an indication that some evidence of a new crime existed. The determination of whether a witness's testimony as to an element of an offense is credible is appropriately left to the finder of fact at a trial, not to a trial court at a pre-trial hearing.

We conclude that the exclusionary rule does not apply in this case and that the court of appeals did not err in overturning the trial court's ruling on the pre-trial motion to suppress the evidence. We affirm the judgment of the court of appeals.

Delivered: October 29, 2008
Publish