# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00609-CR

**Roni Lewis Medearis, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-08-904087, HONORABLE MELISSA YOUNG GOODWIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Roni Lewis Medearis guilty of aggravated sexual assault and burglary of a habitation. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2009), § 30.02 (West 2003). The district court assessed punishment at seventy years' imprisonment for the sexual assault and sixty years' imprisonment for the burglary. In a single point of error, appellant contends that his conviction should be reversed because a sample of his blood was unlawfully taken and used to make a DNA profile for a criminal database. We overrule this contention and affirm the judgments of conviction.

On August 14, 2005, a man entered the complainant's residence without her permission and sexually assaulted her. The complainant fought her attacker, butting him with her head and cutting his lip. By the time the assault was over, the assailant's blood was on the

complainant, her clothing, her bed, and the walls of the house. Samples of this blood were collected, and a DNA profile of the attacker was obtained.

The complainant gave the police a detailed description of her attacker. Within a few days of the attack, the police had a suspect who the complainant, with some reluctance, identified. This suspect was later exonerated because his DNA did not match the assailant's DNA. The investigation then languished until November 14, 2006, when the police were notified that there had been a "CODIS hit," that is, the attacker's DNA profile had been matched with a DNA profile contained in the Combined DNA Index System maintained by the Federal Bureau of Investigation. *See* Tex. Gov't Code Ann. § 411.141(1) (West Supp. 2009). The CODIS profile belonged to appellant. After the complainant identified appellant in a photo spread, a warrant was issued and a sample of appellant's saliva was collected using a buccal swab.[1] The DNA extracted from this sample of appellant's saliva was shown to match the DNA extracted from the biological material collected at the crime scene. Appellant does not question the sufficiency of the evidence as to his guilt.

On the morning his trial was scheduled to begin, appellant filed a "motion to suppress illegally seized DNA." Among other things, the motion alleged that "[a]ll DNA evidence seized by the state, if any," was the product of an unlawful arrest, search, and seizure, and that "[i]f the search and seizure were made under the authority of a search warrant," the supporting affidavit did not state probable cause. The motion did not clearly indicate whether appellant sought to suppress the DNA profile submitted to CODIS, the DNA evidence extracted from the buccal swab, or both. At the

---

[1] Both parties state that a warrant was issued, but the warrant does not appear in the record.

hearing on the motion, however, appellant's counsel stated that the motion was filed "to suppress the original DNA material that was seized by the State and placed within the CODIS databanks back in early 2006 at some point in time."

Appellant testified at the hearing that in 2006 he was incarcerated in a state jail following a conviction for forgery. Before he was released, a sample of his blood was taken to perform an AIDS test. Appellant testified that he was not told that this blood would be used for any other purpose. The prosecutor introduced copies of documents obtained from the state jail. These documents reflect that the blood sample was taken from appellant on January 13, 2006, upon his arrival at the state jail. The prosecutor told the court that she had been informed that the DNA profile "was actually uploaded into CODIS" on October 14, 2006.

Defense counsel argued to the court that "the basis for our motion [is] . . . that it was purportedly for an AIDS test, the blood draw, or however they got the DNA, that was illegally seized for purposes of CODIS; that it was a violation of his Constitutional rights to privacy as well as HIPAA laws dealing with medical privacy."[2] Counsel disavowed any claim that government code chapter 411 had been violated. "What we're saying is that the—they can collect it whenever they want to, but they can't collect it—my argument is they can't collect it surreptitiously, which is exactly what they did, according to my client."

Appellant's point of error asserts that his DNA "was seized in violation of his constitutional right to privacy." In his argument in support of this point, however, the only privacy

---

[2] HIPAA is the Health Insurance Portability and Accountability Act of 1996, which sought to guarantee the privacy of patient medical records. *See* Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended at 42 U.S.C.A. §§ 1320d to 1320d-9 (West 2003 & Supp. 2009)).

interest appellant asserts is that inherent in the Fourth Amendment's prohibition of unreasonable searches and seizures. Appellant makes no argument and cites no authority in support of any broader privacy claim, nor does he cite or mention HIPAA.

Appellant argues that his Fourth Amendment rights were violated because false and misleading statements were used to obtain the blood sample from which the CODIS profile was taken. The evidence does not support this claim. Appellant testified that he was told that the blood was being taken for an AIDS test. This was not a false statement; appellant testified that he was later told the result of that test. Appellant's real complaint appears to be that he was not informed that the blood sample would also be used to prepare a DNA profile for the CODIS databank. Section 411.148 does not require such notice, and appellant cites no authority suggesting that such notice is required. The court of criminal appeals has held that the mandatory, warrantless collection and databank system established by chapter 411 of the government code does not violate the Fourth Amendment rights of persons required to give samples for the system. *Segundo v. State*, 270 S.W.3d 79, 98 (Tex. Crim. App. 2008); *see* Tex. Gov't Code Ann. § 411.148 (West Supp. 2009) (mandatory sampling for DNA record).

Even if there had been some impropriety in the taking of the blood sample used to make the CODIS profile, appellant does not explain how this impropriety tainted the evidence at his trial. After the "CODIS hit," the complainant identified appellant in a photo spread. Then, a buccal swab was used to obtain a sample of appellant's saliva. Using the sample from the buccal swab, an expert prepared a profile of appellant's DNA and determined that it matched the assailant's DNA profile. Appellant may have first been linked to this offense by the CODIS profile, but the evidence

4

of his guilt was obtained by means sufficiently distinguishable to be purged of any taint. *See State v. Iduarte*, 268 S.W.3d 544, 550-51 (Tex. Crim. App. 2008).

The point of error is overruled, and the judgments of conviction are affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   June 23, 2010

Do Not Publish