COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JENNY CARRILLO, | § | No. 08-11-00086-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court at Law No. 2 |
| STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20100C05152) |
| | § | |

## **O P I N I O N**

Jenny Carrillo ("Carrillo") appeals the trial court's judgment convicting her of the

misdemeanor offense of driving while intoxicated.   In a single issue, Carrillo argues that the trial

court abused its discretion in denying her motion to suppress evidence because her "continued"

detention was not a reasonable exercise of a police officer's community care-taking function.   We

affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 3 a.m. on May 19, 2010, El Paso Police Officer Andres Rodriguez, Jr.

("Officer Rodriguez") was on routine patrol when he observed Carrillo fail to turn at an

intersection despite having a green light.   When Carrillo failed to proceed after the light turned

green through two cycles, Officer Rodriguez exited his vehicle and approached Carrillo's vehicle.[1]

Officer Rodriguez noticed that the motor was running and the vehicle was in drive, but that

Carrillo was slumped over and asleep with her foot on the brake.   Carrillo awoke after Officer

Rodriguez reached into Carrillo's vehicle and shifted the gear from drive to park.   When Carrillo

---

[1] By then, Officer Rodriguez had parked his vehicle behind Carrillo's.

awoke, she looked dazed and was mumbling.   Concerned that Carrillo might be ill and not realize it, Officer Rodriguez asked her if she was fine.   Although Carrillo responded that she was, she continued mumbling.   To gauge whether Carrillo had her mental and physical faculties, Officer Rodriguez asked Carrillo for her driver's license and insurance.   While Carrillo was searching for her driver's license, she explained to Officer Rodriguez that a friend of hers must have had her license and subsequently provided him with a credit card after being asked to produce some further proof of identification.   During this interaction, Carrillo continued mumbling so incoherently that Officer Rodriguez could not "understand most of what she was saying."

While talking with Carrillo, Officer Rodriguez detected the odor of alcohol and noticed that Carrillo had bloodshot eyes and mumbled speech.   Officer Rodriguez asked Carrillo to step out of her vehicle.   As Carrillo did so, she stumbled to maintain her balance, prompting Officer Rodriguez to ask Carrillo if she had been drinking.   When Carrillo answered that she had been drinking, Officer Rodriguez asked Carrillo if she would submit to field sobriety tests.   Carrillo agreed.   After Carrillo exhibited all six clues on the horizontal gaze nystagmus test, Officer Rodriguez administered all of the other tests.   Thereafter, Officer Rodriguez advised Carrillo of her statutory warnings and requested a breath sample.   When Carrillo refused, Officer Rodriguez arrested her.

## THE MOTION TO SUPPRESS

Carrillo does not challenge either her "initial" detention pursuant to the exercise of Officer Rodriguez's community care-taking function or, directly, her ultimate arrest for driving while intoxicated.   Rather, Carrillo contends that Officer Rodriguez's "continued" detention of her after

she awoke, *i.e.*, the period of questioning during which he observed indications that she might be intoxicated, was not a reasonable exercise of his community care-taking function.   In so arguing, Carrillo urges us to focus exclusively on the moment she awoke and informed Officer Rodriguez that she was fine as the liminal boundary by which her continued detention must be measured and held as unreasonable.   We decline to do so.

### *Standard of Review*

When reviewing the trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling.   *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex.Crim.App. 2008).   When, as here, the trial court issues findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings, giving almost total deference to the trial court's findings of fact.   *Id.*   However, we review the trial court's conclusions of law *de novo*.   *Id.*   We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case.   *Id.*

### *Applicable Law*

The community care-taking function allows police officers, as part of their duty to "serve and protect," to stop or temporarily detain an individual whom a reasonable person would believe is in need of help, *given the totality of circumstances*.   *Wright v. State*, 7 S.W.3d 148, 151 (Tex.Crim.App. 1999).   Determining whether an officer has properly invoked the community care-taking function is a two-step process.   *Corbin v. State*, 85 S.W.3d 272, 277 (Tex.Crim.App. 2002).   First, we must determine whether the officer was primarily motivated by a community care-taking purpose.   *Id.*   Second, we must determine whether the officer's belief that assistance was required was reasonable.   *Id.*   In determining whether the officer's belief that the defendant

3

needed help was reasonable, we consider four non-exclusive factors: (1) the nature and level of the distress exhibited by the defendant; (2) the location of the defendant; (3) whether or not the defendant was alone and/or had access to assistance other than that offered by the officer; and (4) to what extent the defendant, if not assisted, presented a danger to himself or others. *Id*.

### *Discussion*

The trial court found that Officer Rodriguez's observations of Carrillo stemmed from the lawful exercise of his community care-taking function and denied Carrillo's motion to suppress on this basis. The record and case law support the trial court's ruling.

First, the trial court correctly concluded that Officer Rodriguez was primarily motivated by community care-taking purposes when he approached Carrillo and temporarily detained her.[2] Officer Rodriguez approached Carrillo to check on her welfare because she had not turned through three green-light cycles. When Officer Rodriguez discovered that Carrillo was slumped over asleep with the motor running, the vehicle in drive, and her foot on the brake, he put the vehicle in park so she would not "suddenly wake up and drive through the intersection." As previously mentioned, when Carrillo awoke, she looked dazed and was mumbling and, although Carrillo responded that she was fine, she continued mumbling. It was then that Officer Rodriguez asked Carrillo for her driver's license and insurance to gauge whether Carrillo had her mental and physical faculties. Carrillo continued mumbling so incoherently that Officer Rodriguez could not understand most of what she was saying. The record supports the trial court's finding and conclusion that when Officer Rodriguez was questioning Carrillo, he was primarily motivated by a community care-taking function.

---

[2] Carrillo herself concedes that the initial stop was justified under Officer Rodriguez's community care-taking function.

Second, the trial court was also correct in concluding that Officer Rodriguez's belief that he needed to detain Carrillo to ascertain whether she needed assistance was reasonable. The fact that Carrillo was alone and could have been injured had her foot slipped off the brake while she was sleeping weigh in favor of Officer Rodriguez's continued detention of Carrillo. So too does the nature and level of the distress exhibited by Carrillo as well as her location. Carrillo was on a public road at 3 a.m. Minutes before approaching Carrillo, Officer Rodriguez had observed another driver go around Carrillo when she did not turn. Despite being asked repeatedly for a driver's license, Carrillo provided Officer Rodriguez with a credit card instead. And as previously mentioned, Carrillo mumbled so incoherently during her interaction with Officer Rodriguez that he could not understand most of what she was saying. The record supports the trial court's finding and conclusion that Officer Rodriguez's belief that Carrillo needed assistance when he was questioning her was reasonable.

Given the temporal simultaneity of these events, their brevity, and the totality of the circumstances, and the fact that the continued detention was no longer than necessary, we hold that Officer Rodriguez reasonably exercised his community care-taking function by questioning Carrillo after she awoke. *See Rochester v. State*, No. 02-03-00519-CR, 2004 WL 1798090, at *1 (Tex.App.--Fort Worth Aug. 12, 2004, no pet.)(mem. op., not designated for publication) (affirming a driver's conviction for possession of a prohibited weapon on the basis that a police officer reasonably exercised his community care-taking functioning when he woke the driver, who was alone and unconscious at a busy thoroughfare, and had the driver step out of the car to ask the driver for his driver's license and several other questions, which led to the discovery of a switch-blade knife when the officer patted the driver down); *Yocom v. State*, No. 02-03-00181-CR,

5

2004 WL 742888, at *5-7 (Tex.App.--Fort Worth Apr. 8, 2004, pet. ref'd)(not designated for publication)(affirming a driver's conviction for driving while intoxicated on the basis, among others, that a police officer reasonably exercised his community care-taking function by waking the driver, who was alone and slumped over the wheel of his running vehicle in a bank parking lot, and observing, during the three-minute span that it took the officer to wake the driver to ascertain the reason for the driver's condition, that the driver was in a daze, had glassy, watery, and bloodshot eyes, and could not follow the officer's instructions).   Accordingly, the trial court did not abuse its discretion when it overruled Carrillo's motion to suppress evidence.   Carrillo's sole issue is overruled.

## CONCLUSION

Having overruled Carrillo's sole issue, we affirm the trial court's judgment.


June 20, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)


6