COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 


 
 
 JENNY CARRILLO,
  
                             Appellant,
  
 v.
  
 STATE OF TEXAS,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 
 
  
 No. 08-11-00086-CR
  
 Appeal from the
  
 County
 Criminal Court at Law No. 2
  
 of El
 Paso County, Texas 
  
 (TC# 20100C05152) 
  
 
 


 

O
P I N I O N

            Jenny Carrillo (“Carrillo”) appeals the trial
court’s judgment convicting her of the misdemeanor offense of driving while
intoxicated.  In a single issue, Carrillo
argues that the trial court abused its discretion in denying her motion to
suppress evidence because her “continued” detention was not a reasonable
exercise of a police officer’s community care-taking function.  We affirm.

Factual and Procedural Background

At approximately 3 a.m. on May 19, 2010, El
Paso Police Officer Andres Rodriguez, Jr. (“Officer Rodriguez”) was on routine
patrol when he observed Carrillo fail to turn at an intersection despite having
a green light.  When Carrillo failed to proceed
after the light turned green through two cycles, Officer Rodriguez exited his
vehicle and approached Carrillo’s vehicle.[1]  Officer Rodriguez noticed that the motor was
running and the vehicle was in drive, but that Carrillo was slumped over and
asleep with her foot on the brake.  Carrillo
awoke after Officer Rodriguez reached into Carrillo’s vehicle and shifted the
gear from drive to park.  When Carrillo
awoke, she looked dazed and was mumbling. 
Concerned that Carrillo might be ill and not realize it, Officer
Rodriguez asked her if she was fine. 
Although Carrillo responded that she was, she continued mumbling.  To gauge whether Carrillo had her mental and
physical faculties, Officer Rodriguez asked Carrillo for her driver’s license
and insurance.  While Carrillo was
searching for her driver’s license, she explained to Officer Rodriguez that a
friend of hers must have had her license and subsequently provided him with a
credit card after being asked to produce some further proof of
identification.  During this interaction,
Carrillo continued mumbling so incoherently that Officer Rodriguez could not
“understand most of what she was saying.”

While talking with Carrillo, Officer Rodriguez
detected the odor of alcohol and noticed that Carrillo had bloodshot eyes and mumbled
speech.  Officer Rodriguez asked Carrillo
to step out of her vehicle.  As Carrillo
did so, she stumbled to maintain her balance, prompting Officer Rodriguez to
ask Carrillo if she had been drinking.  When
Carrillo answered that she had been drinking, Officer Rodriguez asked Carrillo
if she would submit to field sobriety tests. 
Carrillo agreed.  After Carrillo
exhibited all six clues on the horizontal gaze nystagmus test, Officer Rodriguez
administered all of the other tests. 
Thereafter, Officer Rodriguez advised Carrillo of her statutory warnings
and requested a breath sample.  When
Carrillo refused, Officer Rodriguez arrested her.

 

THE
MOTION TO SUPPRESS

Carrillo does not challenge either her “initial”
detention pursuant to the exercise of Officer Rodriguez’s community care-taking
function or, directly, her ultimate arrest for driving while intoxicated.  Rather, Carrillo contends that Officer
Rodriguez’s “continued” detention of her after she awoke, i.e., the period of questioning during which he observed
indications that she might be intoxicated, was not a reasonable exercise of his
community care-taking function.  In so
arguing, Carrillo urges us to focus exclusively on the moment she awoke and
informed Officer Rodriguez that she was fine as the liminal boundary by which
her continued detention must be measured and held as unreasonable.  We decline to do so.

Standard of Review

When reviewing the trial court’s ruling on a
motion to suppress, we view the evidence in the light most favorable to the
trial court’s ruling.  State v. Iduarte, 268 S.W.3d 544, 548
(Tex.Crim.App. 2008).  When, as here, the
trial court issues findings of fact, we determine whether the evidence, when
viewed in the light most favorable to the trial court’s ruling, supports those
findings, giving almost total deference to the trial court’s findings of fact.  Id.
 However, we review the trial court’s conclusions
of law de novo.  Id.  We uphold the trial court’s ruling if it is
supported by the record and correct under any theory of law applicable to the
case.  Id.

Applicable Law

            The community care-taking
function allows police officers, as part of their duty to “serve and protect,”
to stop or temporarily detain an individual whom a reasonable person would
believe is in need of help, given the
totality of circumstances.  Wright v. State, 7 S.W.3d 148, 151
(Tex.Crim.App. 1999).  Determining
whether an officer has properly invoked the community care-taking function is a
two-step process.  Corbin v. State, 85 S.W.3d 272, 277 (Tex.Crim.App. 2002).  First, we must determine whether the officer
was primarily motivated by a community care-taking purpose.  Id.  Second, we must determine whether the officer’s
belief that assistance was required was reasonable.  Id.  In determining whether the officer’s belief
that the defendant needed help was reasonable, we consider four non-exclusive
factors:  (1) the nature and level of the
distress exhibited by the defendant; (2) the location of the defendant; (3)
whether or not the defendant was alone and/or had access to assistance other
than that offered by the officer; and (4) to what extent the defendant, if not
assisted, presented a danger to himself or others.  Id.

Discussion

The trial court found that Officer
Rodriguez’s observations of Carrillo stemmed from the lawful exercise of his community
care-taking function and denied Carrillo’s motion to suppress on this basis.  The record and case law support the trial
court’s ruling.

First, the trial court correctly concluded that
Officer Rodriguez was primarily motivated by community care-taking purposes
when he approached Carrillo and temporarily detained her.[2]  Officer Rodriguez approached Carrillo to check
on her welfare because she had not turned through three green-light cycles.  When Officer Rodriguez discovered that Carrillo
was slumped over asleep with the motor running, the vehicle in drive, and her
foot on the brake, he put the vehicle in park so she would not “suddenly wake
up and drive through the intersection.”  As
previously mentioned, when Carrillo awoke, she looked dazed and was mumbling
and, although Carrillo responded that she was fine, she continued
mumbling.  It was then that Officer
Rodriguez asked Carrillo for her driver’s license and insurance to gauge
whether Carrillo had her mental and physical faculties.  Carrillo continued mumbling so incoherently
that Officer Rodriguez could not understand most of what she was saying.  The record supports the trial court’s finding
and conclusion that when Officer Rodriguez was questioning Carrillo, he was
primarily motivated by a community care-taking function.

Second, the trial court was also correct in
concluding that Officer Rodriguez’s belief that he needed to detain Carrillo to
ascertain whether she needed assistance was reasonable.  The fact that Carrillo was alone and could
have been injured had her foot slipped off the brake while she was sleeping
weigh in favor of Officer Rodriguez’s continued detention of Carrillo.  So too does the nature and level of the
distress exhibited by Carrillo as well as her location.  Carrillo was on a public road at 3 a.m.  Minutes before approaching Carrillo, Officer
Rodriguez had observed another driver go around Carrillo when she did not
turn.  Despite being asked repeatedly for
a driver’s license, Carrillo provided Officer Rodriguez with a credit card
instead.  And as previously mentioned,
Carrillo mumbled so incoherently during her interaction with Officer Rodriguez
that he could not understand most of what she was saying.  The record supports the trial court’s finding
and conclusion that Officer Rodriguez’s belief that Carrillo needed assistance
when he was questioning her was reasonable.

Given the temporal simultaneity of these
events, their brevity, and the totality of the circumstances, and the fact that
the continued detention was no longer than necessary, we hold that Officer Rodriguez
reasonably exercised his community care-taking function by questioning Carrillo
after she awoke.  See Rochester v. State, No. 02-03-00519-CR, 2004 WL 1798090, at *1
(Tex.App.--Fort Worth Aug. 12, 2004, no pet.)(mem. op., not designated for
publication) (affirming a driver’s conviction for possession of a prohibited
weapon on the basis that a police officer reasonably exercised his community
care-taking functioning when he woke the driver, who was alone and unconscious
at a busy thoroughfare, and had the driver step out of the car to ask the
driver for his driver’s license and several other questions, which led to the
discovery of a switch-blade knife when the officer patted the driver down); Yocom v. State, No. 02-03-00181-CR, 2004
WL 742888, at *5-7 (Tex.App.--Fort Worth Apr. 8, 2004, pet. ref’d)(not
designated for publication)(affirming a driver’s conviction for driving while
intoxicated on the basis, among others, that a police officer reasonably
exercised his community care-taking function by waking the driver, who was
alone and slumped over the wheel of his running vehicle in a bank parking lot, and
observing, during the three-minute span that it took the officer to wake the
driver to ascertain the reason for the driver’s condition, that the driver was
in a daze, had glassy, watery, and bloodshot eyes, and could not follow the
officer’s instructions).  Accordingly, the
trial court did not abuse its discretion when it overruled Carrillo’s motion to
suppress evidence.  Carrillo’s sole issue
is overruled.

CONCLUSION

            Having
overruled Carrillo’s sole issue, we affirm the trial court’s judgment.

 

 

 

June 20, 2012

                                                                                    CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)











[1]
By then, Officer Rodriguez had parked his vehicle behind Carrillo’s.





[2]
Carrillo herself concedes that the initial stop was justified under Officer
Rodriguez’s community care-taking function.