**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00559-CR**
_____

**KENNETH LEE MARTIN JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D-110,726-R**

**MEMORANDUM OPINION**

This is an appeal by Kenneth Lee Martin Jr. of the trial court's ruling on a motion to suppress an oral statement made by appellant. Martin contends that the admission of his oral statement was improper because it was the product of a custodial interrogation and was not electronically recorded in accordance with the provisions of the Texas Code of Criminal Procedure. After the trial court denied his motion to suppress, a jury convicted Martin of felony possession of a controlled

1

substance and assessed punishment at two years confinement in state jail and a $10,000 fine. We affirm the judgment of the trial court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Leonard Roff, an officer with the Pinehurst Police Department, was on patrol in Orange County when he observed a vehicle, with its high beams on, approach him from behind. Martin was riding in the front passenger seat of the vehicle. Martin's cousin, Brandon Lee Martin, was driving. The vehicle was owned by Brandon's girlfriend, who was not in the vehicle at the time. Officer Roff conducted a traffic stop. West Orange Police Officer Chance Reed arrived on the scene and assisted Roff with the traffic stop. At some point during the stop, Constable Rob Strause also arrived at the scene.

After stopping the vehicle, Roff obtained "verbal consent" from the driver to search the vehicle. Roff found a small plastic baggy containing methamphetamine between some clothing in the trunk of the vehicle. Officer Roff testified he considered Brandon and Martin as being detained at that point in time and would not have allowed them to leave. Roff asked both Brandon and Martin who owned the drugs. Roff never advised them of any *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Roff testified he told Brandon and Martin that if they both denied ownership of the drugs, he would charge them both with

2

possession.  Martin then made the statement that Brandon had a baby on the way and did not need to go to jail.  Martin stated that he would "take the hit for it." Roff then handcuffed Brandon and Martin and placed them both under arrest.

At some point thereafter, Constable Strause read Martin his *Miranda* rights. *Id.* After being read his rights, Martin again claimed ownership of the contraband. Because of a malfunction of the audio and video equipment on Roff's patrol car, the traffic stop and oral statements were not recorded.

Prior to trial, Martin filed a motion to suppress the oral statements he made during the traffic stop. In the motion, Martin alleged that admission of his oral statements would violate articles 38.22 and 38.23 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West Supp. 2013), art. 38.23 (West 2005).  At the hearing on the motion to suppress, Martin denied ever claiming ownership or possession of the alleged contraband.  In its oral findings of fact, the trial court found in pertinent part:

> Officer Roff conducted a traffic stop and was given verbal consent to search the vehicle. He searched the vehicle, and in the trunk he found some methamphetamine between some clothing.  He inquired as to the . . . driver and the passenger as "Who does that belong to?" And neither party admitted ownership, did not belong to them.  The officer then advised them he was going to place both of them under arrest for possession.  The defendant at that time stepped forward and said -- admitted the drugs were his and that he -- the driver had a family and did not need to go to jail.  The officer proceeded to arrest both of them.  The audio and video equipment were not functioning.  So,

3

there was no recording of the arrest. Constable Rob Strause arrived at the scene and read the [*Miranda*] warnings to the defendant. The defendant then admitted that the drugs, again, were his. And the defendant was placed under arrest and charged with the offense.

The Court then denied the motion to suppress.

Constable Strause did not testify at trial. Martin's confession came into evidence only through the trial testimony of Officers Roff and Reed. A jury convicted Martin of the alleged offense; he was sentenced to two years confinement in jail and assessed a $10,000 fine. The trial court entered a judgment of conviction in accordance with the jury's verdict and this appeal followed. On appeal, Martin argues in one issue that the trial court erred in denying his motion to suppress the "unrecorded oral statements made by appellant while [he] was detained."

## II. STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We defer to the trial court's determination of historical facts supported by the record, especially when they are based on credibility assessments, and mixed questions of law and fact that turn on credibility assessments. *State v. Iduarte*, 268 S.W.3d 544, 548-49 (Tex. Crim. App. 2008); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc). We review legal questions and mixed questions of law and

4

fact that do not turn on credibility assessments under a de novo standard. *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011); *Carmouche*, 10 S.W.3d at 327.

In *Alford v. State*, the Texas Court of Criminal Appeals explained that "'[i]f credibility and demeanor are not necessary to the resolution of an issue, whether a set of historical facts constitutes custodial interrogation . . . is subject to *de novo* review because that is an issue of law[.]'" 358 S.W.3d 647, 653 (Tex. Crim. App. 2012); *see also State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). The fact that credibility and demeanor "are important factors" in the trial court's assessment does not necessarily mean that the raised issue "'turns'" on an evaluation of credibility and demeanor. *Saenz*, 411 S.W.3d at 494. Additionally, "[t]he ultimate legal determination of whether an individual was in custody requires an appellate court to take the facts, as assessed for weight and credibility by the trial court, and then to make a legal determination as to whether those facts amount to custody under the law." *Id.* We take the trial court's fact findings that are supported by the record and determine whether those facts amount to custody under the applicable law. *See id.*

## III. ANALYSIS

Martin argues his oral statements were inadmissible against him at trial because they were not electronically recorded pursuant to article 38.22. Under Texas law, a defendant's oral statement, made as the result of a custodial interrogation, is not admissible against him in a criminal proceeding unless, among other requirements, the statement is electronically recorded. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(1). The State argues that Officer Roff's detention of Martin was non-custodial before the time that Officer Roff placed Martin under arrest and, thus, the statements are not subject to the requirements of article 38.22. The State further contends that Martin's confession was not the result of a custodial interrogation as the statement was not made in response to a question by Officer Roff.

### A. Custody

A person is "in custody" if, after considering all of the objective circumstances, a reasonable person would believe that his or her freedom of movement is restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254-55 (Tex. Crim. App. 1996); *see also Estrada v. State*, 313 S.W.3d 274, 294 (Tex. Crim. App. 2010). In making this determination, we ascertain first, "whether, in light of 'the objective circumstances of the

interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012) (citations omitted). If the answer is "yes," we then consider "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at 1190. In *Dowthitt*, the Texas Court of Criminal Appeals outlined four general situations that may constitute custody:

> (1) when the suspect is physically deprived of his freedom of action in any significant way,
> (2) when a law enforcement officer tells the suspect that he cannot leave,
> (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and
> (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Dowthitt*, 931 S.W.2d at 255. In the first three of these categories, a detainee's freedom of movement must be restrained "to the degree associated with an arrest[.]" *Id*.; *State v. Ortiz*, 382 S.W.3d 367, 376 (Tex. Crim. App. 2012). With regard to the fourth category, an officer's belief that probable cause exists must be "manifested to the suspect." *Dowthitt*, 931 S.W.2d at 255; *Ortiz*, 382 S.W.3d at 376-77.

To support his contention that his statements were made in response to a custodial interrogation, Martin relies on Officer Roff's testimony that Martin and Brandon were being detained at the time that he questioned them, as well as Roff's testimony that he would not have allowed them to leave after he found the drugs. An officer's subjective view regarding the nature of an interrogation, or his belief concerning the potential culpability of the individual being questioned, may be one of many factors that bear upon the assessment of whether that individual was in custody, but "'only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.'" *Estrada*, 313 S.W.3d at 294 (quoting *Stansbury v. California*, 511 U.S. 318, 325 (1994)); *see also State v. Stevenson*, 958 S.W.2d 824, 829 n.7 (Tex. Crim. App. 1997).

Texas law is well settled that "a person held for investigative detention is not in 'custody.'" *Ramirez v. State*, 105 S.W.3d 730, 738 (Tex. App.—Austin 2003, no pet.) (citing *Dowthitt*, 931 S.W.2d at 255). An investigative detention occurs when an officer detains someone who is reasonably suspected of engaging in criminal activity to determine his identity or to maintain the status quo while more information is gathered. *Id.* at 739 (citing *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968)). Although an interrogation may begin as non-custodial, police conduct

8

during the encounter may transform a consensual exchange into a custodial interrogation. *Dowthitt*, 931 S.W.2d at 255.

The record establishes that Martin and Brandon were detained while Officer Roff searched the car. They were not handcuffed. After Officer Roff found methamphetamine in the trunk of the car, he questioned both men as to whom the contraband belonged. Probable cause to arrest both men existed, and Officer Roff did not tell Martin he was free to leave. *See id.* After neither man admitted to ownership of the contraband, Officer Roff made a statement to them that he was charging and arresting them both. The record establishes there were ultimately three officers on the scene from three different jurisdictions.[1] *See Ortiz*, 382 S.W.3d at 374 (noting that "[a]n ordinary traffic stop usually involves a single police car and one or two officers."). Under the circumstances, we conclude that Officer Roff's statement would lead a reasonable person in Martin's position to conclude his freedom of movement was restricted to the degree associated with an arrest. *See id.* at 375; *see also Dowthitt*, 931 S.W.2d at 255. On this record, we conclude that Martin was in custody when he made the statement. *See Ortiz*, 382 S.W.3d at 375; *see also Dowthitt*, 931 S.W.2d at 254-55. The question then

---

[1] It is unclear from the record at what point during the stop Constable Strause arrived on the scene.

9

becomes whether the statement was made as the result of Roff's interrogation or was a voluntary admission as asserted by the State.

## B. Interrogation

All parties agree that Martin was not advised of his *Miranda* rights immediately following the officer's statement that they were both being arrested. When considering whether a temporary detention has evolved into a custodial interrogation, we consider "the compulsive aspect of custodial interrogation[.]" *Stansbury*, 511 U.S. at 323. Interrogation has been defined as express questioning or any words or actions by police that "the police should know are reasonably likely to elicit an incriminating response[.]" *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980). According to the State, Martin's statement to Officer Roff was a spontaneous, "res gestae" admission. The record supports a conclusion that Martin's statement was not made in direct response to Roff's initial question about ownership of the contraband. The question then becomes whether Martin's claim of ownership was made in direct response to Roff's follow-up statement that, because neither admitted to ownership of the contraband, both men would be arrested. The likelihood of eliciting a response focuses on the perception of the suspect, not the intent of the police. *Id.* at 301.

Martin brought the motion to suppress and took the stand to support his claims. He testified at the suppression hearing that Officer Roff did not ask him if he had any knowledge of the contraband recovered from the vehicle and, further, that he had no discussions with the police officers regarding possession or ownership of any alleged contraband. In fact, Martin denied that he ever told the police officers that the drugs were his. Martin offered no testimony in support of his motion to suppress that he made a claim of ownership of the contraband only in response to a statement or question posed by law enforcement. On cross-examination by the State, Martin was asked if he ever made the statement that the drugs were his, he replied, "I was never asked to do that." The prosecutor then stated: "Then you just answered my question. The cops never asked you?" Martin replied, "No, sir." Officer Roff testified that after his initial inquiry as to whom the drugs belonged, he never asked Martin any further questions. Roff testified that when he told both men that he was charging them both with possession of contraband, Martin volunteered the statement that Brandon did not need to go to jail because he had a baby on the way and the drugs belonged to Martin.

Officer Reed testified that Roff questioned both men about ownership of the methamphetamine, and "[a]t first, originally neither subject took ownership of it. Then as it progressed, Mr. Kenneth Martin stated to Brandon something along the

11

lines of 'You've got a child along the way,' basically. 'I'll take the hit for it.'" On this record, the trial court could have reasonably concluded that Martin's statement was a spontaneous or voluntary admission, not the result of police interrogation and was not subject to the provisions of article 38.22. *See* Tex. Code Crim. Proc. Ann. art. 38.22; *see also Jones v. State*, 795 S.W.2d 171, 176 (Tex. Crim. App. 1990) (citing *Innis*, 446 U.S. at 300); *Ruth v. State*, 167 S.W.3d 560, 570 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). We overrule this issue and affirm the judgment of the trial court.

AFFIRMED

_____
CHARLES KREGER
Justice

Submitted on July 1, 2013
Opinion Delivered January 29, 2014
Do not publish

Before McKeithen, C.J., Kreger and Horton, JJ.