

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00037-CR

George Cristobal **RIVAS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 14, Bexar County, Texas
Trial Court No. 412633
Honorable Timothy Johnson, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  December 23, 2014

AFFIRMED

After a traffic stop, George Cristobal Rivas was arrested for possession of marijuana. He argues on appeal that the trial court erred in denying his motion to suppress. We affirm.

### BACKGROUND

Three witnesses testified at the suppression hearing: Officer James Reyna, Officer Edward Gallardo, and Rivas. Officer Reyna testified that he is in the "Problem Orientated Policing Unit" or "POP," which is "like a tactical response unit" that responds to "problems that are going on within the community." On December 19, 2012, Officer Reyna was on patrol with Officer Edward

Gallardo on the southside of San Antonio. According to Officer Reyna, they were in that particular area because of "reports of a lot of drugs in the area," specifically "a lot of reports of drugs coming from a particular hotel" at the intersection of Roosevelt and Bonner. They were parked at that intersection when they saw a vehicle pass them with two children about the age of two in the back seat. The children were seat-belted, but they were not in safety seats as required by law. Officer Reyna testified he stopped the vehicle for a traffic violation. The driver of the vehicle pulled into the parking lot of the hotel that Officer Reyna and Officer Gallardo had been watching. The vehicle then reversed into a parking space. Before Officer Reyna or Officer Gallardo could exit the patrol car, Rivas, a passenger, got out of the vehicle, opened the trunk, and started searching in the trunk. Officer Reyna testified that anyone getting out of a vehicle during a traffic stop is a safety concern for officers. According to Officer Reyna, Rivas reaching into the trunk of his vehicle "heighten[ed]" the situation as Rivas could have been reaching for a weapon or hiding something. Officer Reyna told Rivas to "stop digging in the trunk" and "to just wait." Officer Reyna testified that he confirmed that the children in the backseat were not in safety restraint seats. He could smell the odor of marijuana. Officer Reyna then saw Officer Gallardo frisk Rivas and heard Officer Gallardo "tell [Rivas] to remove his shoes." Officer Reyna testified that "when [he] saw Officer Gallardo handcuffing [Rivas], [he] also saw some marijuana by [Rivas]'s foot."

Officer Edward Gallardo testified that normally, his attention is on the driver during a traffic stop. However, because a passenger (Rivas) exited the car so quickly and became a "greater threat" to the officers, Officer Gallardo's "attention went straight to [Rivas]." After Officer Reyna told Rivas to stop, Officer Gallardo asked Rivas to place his hands on the vehicle and conducted a "quick frisk." As he was patting down Rivas, Officer Gallardo "detected an odor of marijuana–not overwhelming odor, but odor enough." Officer Gallardo testified that he put handcuffs on Rivas "to detain" him. In an attempt to determine whether the marijuana odor was emanating from Rivas

or the vehicle, Officer Gallardo moved closer to the vehicle. According to Officer Gallardo, the "odor was coming from the vehicle itself." Officer Gallardo then saw in plain sight "some blunts" in the vehicle's ashtray. Officer Gallardo testified that "it wasn't like an ashtray of marijuana. It was one or two blunts, at most." Officer Gallardo placed Rivas under arrest and asked him, "Is there anything on you, before I do a search, or before a do I more thorough search, because I'm going to do a search. Is there anything you would like to tell me at this point?" According to Officer Gallardo, Rivas replied, "No, I got nothing on me." Officer Gallardo noticed that Rivas's shoes did not have any shoelaces and that the shoe on Rivas's right foot appeared to have been pushed in and crushed. Officer Gallardo asked Rivas "if he had anything in his shoes." Rivas replied, "No." Officer Gallardo then asked, "You mind kicking your shoes off?" Officer Gallardo testified that "[h]e complied. He was not uncooperative. He took his shoes off." Officer Gallardo then saw a plastic bag of marijuana fall out of Rivas's right shoe.

Rivas testified that he had been living at the hotel where the traffic stop occurred for three years. According to Rivas, when he was approached by the officers, he was retrieving his father's laptop from the trunk. Rivas claimed that he did not realize the officers had initiated a traffic stop– "[t]hey never hit the lights." Officer Gallardo told him to get away from the trunk, and Rivas complied. Officer Gallardo told Rivas to turn around, and then Officer Gallardo frisked him. Rivas testified that he asked the officer why he was being frisked. Officer Gallardo replied, "I will be right with you." Officer Gallardo placed Rivas in handcuffs. Officer Gallardo then went to the driver's side of the vehicle. Rivas testified that he did not have shoelaces on his shoes. He was wearing "[h]igh-top Jordans with the strap." According to Rivas, the strap prevented the shoe from falling off. Rivas testified he told Officer Gallardo that he did not have shoelaces because the end of his shoelaces had frayed. Rivas further testified that Officer Gallardo found the plastic bag of marijuana in his shoe before the officer searched the ashtray.

On cross-examination, Rivas confirmed that the young children had not been restrained in child safety seats. Rivas testified that he did not consent to a search.

## DISCUSSION

In his sole issue, Rivas argues that he did not freely and voluntarily consent to the search of his shoes. The State responds that whether he voluntarily consented is irrelevant, because the plastic bag of marijuana was found as a result of a search incident to an arrest. We agree with the State.

When reviewing a trial court's ruling on a motion to suppress, we give almost total deference to the court's determination of the historical facts that the record supports, especially when those fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). We accord the same level of deference to the trial court's rulings on mixed questions of law and fact if those decisions turn on the credibility and demeanor of the witnesses. *Guzman*, 955 S.W.2d at 89. We review de novo mixed questions of law and fact that do not turn on witness credibility. *Id.* We must uphold the trial court's ruling "if it is supported by the record and correct under any theory of law applicable to the case." *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *see State v. Story*, No. PD-0590-13, 2014 WL 5247609, at *3 (Tex. Crim. App. Oct. 15, 2014) (explaining in review of ruling on motion to suppress that it "will uphold the judgment if it is correct on some theory of law applicable to the case, even if the trial judge made the judgment for a wrong reason").

The trial court found that the arresting officers saw unrestrained children in the vehicle in which Rivas was passenger. The testimony from the officers supports this finding. Officer Reyna testified that he saw two very young children in the backseat of the vehicle and that they were not seated in a safety seat as required by law. Thus, the officers had probable cause to stop the vehicle

for a traffic violation. The trial court also found that immediately after the vehicle parked, Rivas exited the vehicle. The officers testified that Rivas exited the vehicle and began searching the trunk. Officer Reyna testified that Rivas's actions during the traffic stop raised safety concerns for the officers. The trial court determined that the "temporary detention and pat down of [Rivas] was for the safety of the officers." We agree the evidence supports this legal conclusion. The trial court also found that both officers smelled marijuana as they approached the vehicle and that one of the officers observed "blunts" in the ashtray.[1] Indeed, both officers testified to noticing the smell of marijuana as they approached the opened car door of the vehicle. Officer Gallardo testified that after he frisked Rivas, he attempted to determine whether the smell was emanating from Rivas or the vehicle. He moved backwards toward the front of the vehicle. Officer Gallardo testified it was at this moment that he saw in plain sight "some blunts" in the vehicle's ashtray. Officer Gallardo's testimony makes clear that he saw the marijuana blunts before he searched Rivas's shoe. Having seen the marijuana blunts in plain view, Officer Gallardo had probable cause to arrest Rivas for possession of marijuana. *See* TEX. CODE CRIM. PROC. ANN. 14.01(b) (West 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). Thus, Officer Gallardo could search Rivas's shoe as a search incident to an arrest. *See State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014).

## CONCLUSION

Because the search of Rivas's shoe was permissible as a search incident to an arrest, the trial court did not err in denying Rivas's motion to suppress. The judgment of the trial court is affirmed.

Karen Angelini, Justice

Do not publish

---

[1] Although the trial court found that Officer Reyna testified to observing "blunts" in the ashtray, the reporter's record makes clear that it was Officer Gallardo who testified to having observed the marijuana blunts in the ashtray.