**Opinion issued July 25, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00518-CR

———————————

**RODNEY SCOTT SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 11CR2100**

---

### MEMORANDUM OPINION

A jury convicted appellant, Rodney Scott Smith, of aggravated assault of a

public servant[1] and assessed punishment at 25 years' confinement. In six issues on

---

[1]    *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02(b)(2)(B) (Vernon Supp. 2011).

appeal, appellant contends (1) there is insufficient evidence to support his conviction; (2) the trial court erred in refusing to submit a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure; (3) the trial court erred in denying his motion to suppress; (4) the State violated appellant's rights to due process under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963); (5) the trial court erred in denying appellant's amended motion for new trial; and (6) the State committed prosecutorial misconduct by misleading appellant to believe that it would not oppose his motion for new trial. We affirm.

## BACKGROUND

On the evening of Sunday, July 24, 2011, Bayou Vista Police Officer T. Krietemeyer received a dispatch call instructing him to go to 888 Bonita in Bayou Vista, Texas, to respond to a harassment call. At that location, he spoke to Samitha Hess, who showed him a text message she had received from appellant, who lived next door. The text read, "If nobody told you they love you today  i love you." Hess told Krietemeyer that appellant was harassing her and that she wanted appellant to stop texting her and trying to contact her. Krietemeyer walked next door to appellant's house to attempt to speak with him, but appellant did not answer the door. Krietemeyer returned to Hess's house and told her that there was nothing else he could do at the time, but that he could get a warrant against

2

appellant for harassment by Wednesday.  Krietemeyer then returned to the police station.

At the station, Krietemeyer began typing up the paperwork necessary to obtain an arrest warrant.  He also requested Galveston County dispatch to obtain a "rap sheet" for appellant and to determine whether appellant had a concealed handgun license.  Shortly thereafter, Krietemeyer received a fax that he described at a "hit confirmation" from dispatch indicating that there was an outstanding warrant in Harris County for appellant based on unpaid child support.  The fax also indicated that appellant possessed a concealed handgun license.

Krietemeyer continued drafting his paperwork, but received another call from dispatch telling him to return to Hess's home.  Before he left on the second call to 888 Bonita, Krietemeyer received confirmation from dispatch that they had called and verified that the warrant for appellant was still good and that police should take him into custody if he were located.  Specifically, when questioned about whether he had confirmed the information in the fax, Krietemeyer stated, "It was actually dispatch had already spoken with that particular office and said that the warrant is good and if we—if I could come in contact with Mr. Smith, they would place a hold on him until the proper agency could come down and—."

Upon returning to Hess's home, Krietemeyer again spoke with Hess, who told him that appellant had sent her another text message and, when she went

3

outside to smoke a cigarette, appellant had stood out in the street in front of her home and stared and waved at her.

Krietemeyer again went next door to try and speak with appellant, but appellant, who was home, would not answer the door. Krietemeyer looked up and saw appellant standing in a second story window, so he indicated for appellant to open the window, which he did. Krietemeyer asked appellant to come down and talk, but appellant declined. Krietemeyer told appellant about his conversations with Hess, indicated that he would be obtaining a warrant to arrest appellant for harassment, and told appellant to "have a good day."

Krietemeyer returned to speak with Hess, and as he was talking with her, appellant emerged from his house and stood near the rear of his truck in the driveway. Krietemeyer approached appellant, who seemed "calm but jumpy." Krietemeyer and appellant had a conversation about the harassment call from Hess. Appellant explained that he and Hess used to be really good friends, but that appellant had made a mistake about a year before by getting upset that Hess had gone out with someone else. Appellant said that he really liked Hess that that he wanted things to go back to the way they were before. The conversation between appellant and Krietemeyer did not involve any raised voices, shouting, or anger.

After appellant told Krietemeyer his "side of the story," Krietemeyer said to appellant, "Sir, can you turn around and put your hands behind your back? You

4

have a warrant for arrest." When Krietemeyer reached for his handcuffs, appellant "jumped back and his left hand went around to the left rear pocket . . . of the shorts that he had on." Krietemeyer stated that appellant "was vigorously jerking at his pocket," as he began backing up. Krietemeyer, knowing that appellant had a concealed handgun license, assumed that appellant was reaching for a gun, so he drew his own weapon and began moving to try to keep appellant in sight. As he was moving, Kreitememeyer told appellant, "Don't do this. Don't do this. It's not worth it." Because it was dark, Krietemeyer did not see appellant's gun until he saw a muzzle flash. Krietemeyer then returned fire. Subsequent investigation showed that appellant fired twice and Krietemeyer fired three times. Neither man was injured, and Kreitmeyer was subsequently arrested for assault of a public servant.

Appellant, testifying in his own behalf, presented a different version of the events surrounding the altercation. Appellant testified that after he told Krietemeyer that Hess was his girlfriend and that they had had a "spat" that he was trying "to patch up," Krietemeyer told appellant to put his hands on the truck. When appellant questioned the necessity, Krietemeyer dropped the handcuffs he had been holding and began "rushing" appellant. Appellant said that Krietemeyer told him, "I am going to shoot you," and started pulling out his firearm, raising it to appellant's head. Appellant testified that he was in fear of his life so he took out

5

his own firearm and fired twice.  Appellant also testified that about a month earlier, another Bayou Vista police officer, R. Shannon, had approached appellant at his home and told him that if he ever talked to Hess again he would "hurt him real bad."

## SUFFICIENCY OF THE EVIDENCE

The jury charge in this case provided:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 24th day of July, 2011, in Galveston County, Texas, the Defendant, Rodney Scott Smith, did then and there intentionally or knowingly threaten Timothy Krietemeyer with imminent bodily injury by discharging a firearm at said Timothy Krietemeyer and did then and there use or exhibit a deadly weapon, to wit: a firearm during the commission of said assault and the Defendant did then and there know that the said Timothy Krietemeyer was a public servant, to-wit: a Bayou Vista Police Department officer and that the said Timothy Krietemeyer was there lawfully discharging an official duty,  to-wit: attempting to take the Defendant in custody on an outstanding arrest warrant, as alleged in the indictment, then you will find the Defendant guilty of aggravated assault against a public servant.

In his first issue on appeal, appellant contends that there was insufficient evidence to show that Krietemeyer was "attempting to take the Defendant in custody on an outstanding arrest warrant."

*Standard of Review*

We review evidentiary sufficiency challenges under the *Jackson v. Virginia* standard.  *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).  ("[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a

6

reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.")(referring to *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, (1979)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Viewed in the light most favorable to the verdict, the evidence is insufficient when either: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *See Laster*, 275 S.W.3d at 518. This standard applies equally to both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *Ervin v. State*, 331 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

We do not weigh any evidence or evaluate the credibility of any witnesses, as this was the function of the fact finder. *Williams*, 235 S.W.3d at 750. Instead, we determine whether both the explicit and implicit findings of the fact finder are

7

rational by viewing all the evidence admitted at trial in the light most favorable to the verdict and resolving any inconsistencies in the evidence in favor of the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992).

*Analysis*

Appellant argues that "nowhere in the record does the State establish that Krietemeyer had a valid, outstanding warrant for Appellant's arrest the evening of July 24, 2011." In support, he points to testimony in which Krietemeyer states that (1) the fax he received, which was admitted as State's Exhibit 8, was not a warrant; (2) he would only detain, not arrest, a person if a warrant had not been confirmed, and (3) that he, personally, never confirmed the existence of the warrant. Appellant also points out that the State did not admit Exhibit 8 for the truth of the matter, but only to explain why Officer Krietemeyer acted as he did.

In response, the State agrees that the fax in Exhibit 8 is not a warrant, but argues that the record nonetheless contains evidence that a valid warrant existed. Specifically, there was evidence that Krietemeyer has requested that dispatch determine whether there were outstanding warrants for appellant. There was also evidence that dispatch had checked with the Texas Crime Information Center and the National Crime Information Center and received a "hit," indicating an outstanding warrant for appellant. Dispatch then faxed this information to Officer Krietemeyer. And, despite appellant's argument that this "hit" was never

8

confirmed, Krietemeyer testified that "dispatch had already spoken with that particular office and said that the warrant is good," and that he should arrest appellant if he came in contact with him.

This Court considered whether there was sufficient evidence to show an outstanding warrant when the warrant itself was not admitted into evidence in the case of *State v. Maldonado*, 176 S.W.3d 419 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In *Maldonado*, as here, the State introduced evidence, by way of the arresting officer, that he had arrested the defendant based on an outstanding warrant, the validity of which had been confirmed by dispatch. *Id.* at 420-21. In a motion to suppress, appellant contended that there was no warrant, and the trial court apparently agreed by granting the defendant's motion to suppress. *Id.* On appeal, the State argued that, in light of the officer's testimony, there was sufficient evidence to support the existence of a valid warrant, even though it was not admitted at trial. *Id.* This Court noted that, because no warrant was admitted into evidence, the existence of a valid warrant rested entirely on the credibility of the officer's testimony that such a warrant existed and had been confirmed. *Id.* at 421–22. This Court noted that the trial court was free to disbelieve the officer's testimony about the existence of the warrant, even though that evidence was uncontroverted. *Id.* at 422. As such, the trial court did not abuse its discretion in granting the defendant's motion to suppress. *Id.*

The same evidence is present in this case. There is no warrant in evidence, however there is Officer Krietemeyer's testimony that such a warrant existed and had

9

been confirmed by dispatch. The key difference is that, in this case, the fact finder *believed* the officer on this credibility issue. Just as the trial court was free to disbelieve the officer in *Maldonado*, the jury was entitled to believe Officer Krietemeyer here. We, as an appellant court, do not weigh any evidence or evaluate the credibility of any witnesses, as this was the function of the fact finder. *Williams*, 235 S.W.3d at 750. Because Krietemeyer testified that there was an outstanding warrant, which dispatch had confirmed, and the jury believed this evidence, the evidence is legally sufficient to support the judgment on this issue.

Accordingly, we overrule issue one.

## ARTICLE 38.23 INSTRUCTION

In his second issue, appellant contends the trial court erred in denying his request for a jury instruction under TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). Appellant argues that he was entitled to such an instruction because "Krietemeyer was without legal grounds to attempt to arrest Appellant the evening of July 24, 2012."

*Applicable Law*

Article 38.23(a) of the Texas Code of Criminal Procedure provides as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a). An article 38.23 instruction directs a jury to disregard evidence if it resolves, in a defendant's favor, a factual dispute concerning the manner in which the evidence was obtained. *Hanks v. State*, 104 S.W.3d 695, 700 (Tex. App.—El Paso 2003), *aff'd,* 137 S.W.3d 668 (Tex. Crim. App. 2004). If the defendant successfully raises factual disputes over whether evidence was illegally obtained, inclusion of a properly worded article 38.23 instruction is mandatory. *Id.* (citing *Bell v. State,* 938 S.W.2d 35, 48 (Tex. Crim. App. 1996)).

A defendant's right to the submission of jury instructions under article 38.23(a) is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). A defendant must meet the following three requirements before he is entitled to submission of an article 38.23(a) jury instruction: (1) The evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.*

11

*Analysis*

The State responds that article 38.23 does not apply to provide "any protection to commit a new crime and then to exclude any evidence of that new crime" by arguing that the police acted illegally. We agree with the State.

In *State v. Iduarte*, the defendant was convicted of aggravated assault on a peace officer because he pointed a gun at an officer after the officer unlawfully entered his home. 268 S.W.3d 544, 547–48 (Tex. Crim. App. 2008). The defendant claimed that the officer's testimony about the assault should be excluded as fruit of the unlawful entry. *Id.* The court of criminal appeals disagreed, holding that "evidence of the [assault] did not exist before the [unlawful entry] because the [assault] had not yet occurred," and thus the evidence was not causally connected to the unlawful entry. *Id.* at 551. Therefore, the court concluded that the subsequent independent criminal act was not tainted by the initial unlawful entry, and the exclusionary rule was not applicable. *Id.* In so holding, the court noted as follows:

> Appellee's argument, carried to its extreme logical conclusion, would provide legal protection to the murderer of a police officer, who proves that the officer detained him without articulable suspicion prior to the murder. Under appellee's theory, evidence of that killing would have to be suppressed under article 38.23 because the murder occurred after and because of the officer's initial "illegal" conduct. That theory is not the law.

*Id.* at n.14 (quoting *Martinez v. State*, 91 S.W.3d 331, 340 (Tex. Crim. App. 2002)).

Even if we were to accept appellant's argument that he was illegally arrested, we would nonetheless conclude that Officer Krietemeyer's conduct in making an illegal arrest would not require suppression of appellant's own subsequent illegal conduct in

12

firing at the officer, the offense with which he is charged. "Evidence of the charged offense did not exist before the officer's challenged actions because the charged offense had not yet occurred," and appellant's subsequent independent criminal act "was not causally connected to any unlawful [action] by a state agent." Thus, the exclusionary rule was not applicable and the trial court did not err in overruling appellant's request for an article 38.23 instruction *See Iduarte*, 268 S.W.2d at 551; *Martinez*, 91 S.W.3d at 340; *Goodwin v. State*, 376 S.W.3d 259, 267 (Tex. App.—Austin 2012, pet. ref'd).

We overrule issue two.

## MOTION TO SUPPRESS

In issue three, appellant argues that the trial court erred in denying his motion to suppress "based on the lack of probable cause for his arrest or lack of a valid arrest warrant." Specifically, appellant argues that the trial court should have suppressed "all evidence of events occurring after Appellant and Krietemeyer's short conversation during his second visit to Appellant's residence," which includes appellant's firing of shots at the officer.

For the same reasons given in our analysis of appellant's request for an article 38.23 instruction, we also conclude that the trial court did not err in denying appellant's motion to suppress. *See Iduarte*, 268 S.W.3d at 549–51 (holding trial court did not err in overruling motion to suppress evidence of crime committed by defendant after alleged illegal arrest).

13

Furthermore, appellant's motion to suppress is based on the assertion that the State did not prove that it had a valid warrant for appellant's arrest. However, the law begins with a presumption of proper and lawful conduct by police. *State v. Robinson*, 334 S.W.3d 776, 778–79 (Tex. Crim. App. 2011). The defendant bears the burden of producing evidence that shows that an arrest was illegally made. *Id.* at 779–80 (Cochran, J., concurring). A defendant can meet his initial burden of showing an illegal arrest by producing some evidence that (1) he was arrested, and (2) the police did not have a warrant. *Id.* The burden then shifts to the state to show (1) that the police did, in fact, have a warrant, or (2) the reasonableness of the warrantless arrest. *Id.*

As the movant in the motion to suppress, it was appellant's burden to show that he was arrested without a warrant. Only then would the burden shift to the State to show that it did, in fact, possess a warrant.

Here, appellant never met his initial burden of showing that there was no outstanding warrant. The fact that Officer Krietemeyer's fax was not itself a warrant, is no evidence that such a warrant did not exist. In fact, the fax, while not a warrant, is some evidence that such a warrant existed.

And, even though the burden had not shifted to the State to do so, it nonetheless introduced evidence that dispatch had checked with the Texas Crime Information Center and the National Crime Information Center and received a

"hit," indicating an outstanding warrant for appellant. Dispatch then faxed this information to Officer Krietemeyer. The dispatcher also told Krietemeyer that it had checked with the agency that issued the warrant and confirmed that it was still a good warrant and that officers should arrest appellant if they came in contact with him. Because the State produced evidence that appellant was arrested pursuant to a warrant, even though it did not have the burden to do so, the trial court did not err in overruling appellant's motion to suppress.

We overrule issue three.

## *BRADY* VIOLATON

In issue four, appellant contends the State violated appellants constitutional rights by withholding information that he was entitled to under *Brady v. Maryland*, 373 U.S. at 87, 83 S. Ct. at 1196, and *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766 (1972). In issue five, appellant contends the trial court erred in denying his motion for new trial, which was based on the same grounds. In both issues, appellant argues that the State was in possession of evidence that could have been used to impeach Officer Krietemeyer, but did not turn over such material until after the trial was concluded. Specifically, appellant argues that, several months before the trial, the District Attorney's office was made aware that the Texas Department of Public Safety ["DPS"] was investigating Krietemeyer for violating section 1702.322 of the Texas Occupations Code by working five extra

15

jobs as a security officer when his license as a reserve peace officer did not permit him to do so. *See* TEX. OCC. CODE ANN. § 1702.322(2) (Vernon 2012). DPS had requested in January, two months before appellant's March trial, that the Galveston County District Attorney bring misdemeanor charges against Krietemeyer, but no charges were ever brought.

*Background*

After the trial, but during the time in which a motion for new trial could be filed, the prosecutor in this case, Jon. L. Hall, sent the following letter to defense counsel:

Dear Mr. Jaworski:

It has come to my attention that the complainant witness in the above case, Timothy Krietemeyer, has resigned from the Bayou Vista Police Department after being informed by the Chief of that Department that an investigation was underway concerning whether Mr. Krietemeyer had improperly worked side jobs while a Reserve Police Officer. Neither I nor Reese Campbell was aware of this investigation before or during the trial; we learned of the possibility of such an investigation when Mr. Campbell spoke to Mr. Krietemeyer several days after the trial ended.

I am now informed that in January 2012 the Department of Public Safety had forwarded an investigation report to this office for review and decision whether charges would be accepted. No decision, had, or has, been made about whether charges will be accepted. The District Attorney did not connect the report to the trial of Mr. Smith.

On April 3, 2012, Bayou Vista Police Chief Paul Odin informed Mr. Krietemeyer that he had learned of the DPS investigation. This occurred after Mr. Krietemeyer had completed his testimony.

This information is being provided now, within the period for requesting a new trial, so that you may use it for that purpose if you so choose.

Thank you for your attention in this matter. Sincerely,

16

/Jon. L. Hall
Assistant Criminal District Attorney

Appellant, did, in fact, file a motion for new trial, in which he asserted that the State's failure to inform him of the investigation before trial deprived him of impeachment evidence that he was entitled to under *Brady/Giglio*. Apparently, the State did not intend to oppose the motion, which was supported by affidavits. However, the trial court insisted on a live hearing, stating, "The public safety, of course, is very important; and maybe people would like to avoid a hearing on this motion, maybe even to the point of agreeing to a new trial. But there's just way too many players involved than just the parties that sit in this courtroom." Thereafter, the State did oppose the motion, and a full hearing on the merits was had.

At the hearing, the following evidence was adduced:

In January 2012, two months before the trial, Officer Krietemeyer told his sergeant, R. Shannon, of the Bayou Vista Police Department, that a friend who worked at the Texas City Police Department told him that that department was investigating him for working extra jobs. During that same month, Galveston Assistant District Attorney Timothy Weems, met with an officer from the Texas City Police Department and a trooper from DPS, who wanted charges brought against Krietemeyer for violating the Occupations Code. Three days later, on January 9, Weems gave the report to District Attorney Jack Roady, who put the report on his desk to review before deciding whether to act on the request.

17

In mid-March 2012, just before the trial in this case, Mr. Alvarez, a retired Galveston police officer contacted the chief of the Bayou Vista Police Department, Paul Odin, and told him that DPS and the Texas City Police Department were investigating Krietemeyer for violating the Occupations Code. Odin followed up on April 2nd or 3rd by conferring with a detective from DPS about the investigation.

On April 3, 2012, sometime after Krietemeyer had testified in the present case, Chief Odin met with Krietemeyer and told him that he was under investigation by DPS for working extra jobs, and that the investigation had been forwarded to the District Attorney. In his report, Odin noted that Krietemeyer "admitted to working 5 extra jobs between Texas City, Galveston and the Galveston County Fair." Odin told Krietemeyer that the Bayou Vista Police Department would be opening its own investigation. Odin then gave Krietemeyer the opportunity to resign, which he did.

After Krietemeyer's resignation, Odin spoke to District Attorney Jack Roady on April 3, 2012, and informed him that Krietemeyer was under investigation. At this point, District Attorney Roady made the connection between Krietemeyer, the complainant in this case, and the report about the officer under investigation by the DPS, which he had been given back in January. Once he realized the connection, the District Attorney had his prosecutor, Jon Hall, send the letter to defense counsel that is detailed above.

*Standard of Review and Applicable Law*

We review a trial court's ruling on a motion for new trial using an abuse-of-discretion standard. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

18

We view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it was within the zone of reasonable disagreement. *Id.* A defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion to grant a motion for new trial, but trial courts do not have discretion to grant a new trial unless the defendant demonstrates that the first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial. *See State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007).

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S. Ct. 1196–97. *Giglio v. United States* extended this rule to include impeachment evidence as well as exculpatory evidence. 405 U.S. 150, 153–154, 92 S. Ct. 763, 765–66. To establish entitlement to a new trial based on *Brady* violation, a defendant must demonstrate that

> (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith;
>
> (2) the withheld evidence is favorable to him; [and]
>
> (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different.

19

*Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Additionally, we require that the evidence central to the *Brady* claim be admissible in court. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993).

The State argues that there is no *Brady* violation because "appellant did not show that the information [regarding the DPS investigation of Krietemeyer] would have been admissible." The trial court apparently agreed because at the conclusion of the motion for new trial hearing, the trial court stated, "If we admit all accusations against all witnesses when based on nothing more than just accusations, we would have trial within trials within trials; and that's why the rule of evidence require more than accusations. And accusations don't make for *Brady* material." We agree. Although appellant cites no authority for admissibility of the potential impeachment evidence regarding DPS's investigation of Krietemeyer for Occupations Code violations, we will nonetheless review several possible bases for the evidence's admission.

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). However, a defendant may offer evidence of the victim's character trait for violence to demonstrate that the victim was, in fact, the first aggressor. TEX. R. EVID. 404(a)(2). Here, the DPS investigation about whether Krietemeyer had violated the Occupations Code had no bearing on his propensity for violence

20

or whether he was the first aggressor. Thus, the evidence of the investigation was not admissible under TEX. R. EVID. 404(a).

With regard to a witness's credibility, "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness, nor proved by extrinsic evidence." TEX. R. EVID. 608(b). Thus, defendant was not entitled to attack Krietemeyer's credibility by showing, pursuant to Rule 609(b), that he was under investigation for violating the Occupations Code, a specific instance of misconduct.

Under certain circumstances, a witness's credibility may also be attacked by evidence that he has been convicted of a felony or a crime of moral turpitude. TEX. R. EVID. 609. Here, Kreitemeyer has not been convicted of, nor even charged with, a crime. And, the crime for which he was being investigated was not a felony or a crime of moral turpitude.

Also under limited circumstances, evidence that charges have been filed against a witness may become admissible upon a showing that such evidence tends to establish prejudice, interest, bias or motive of the witness in testifying as he has. *Alexander v. State*, 740 S.W.2d 749, 763 (Tex. Crim. App. 1987); *Murphy v. State*, 587 S.W.2d 718, 722 (Tex. Crim. App. 1979). However, appellant never argued

21

that Kreitmeyer testified as he did because he was biased or had some interest in doing so, and no charges were ever filed Kreitemeyer.

Finally, to the extent that appellant seems to be arguing that Kreitemeyer "opened the door," by testifying on cross-examination that he left the Bayou Vista Police Department "on good terms," we note that a cross-examining party may not impeach a witness during cross-examination on a collateral issue. *Shipman v. State*, 604 S.W.2d 182, 183 (Tex. Crim. App. 1980).

In *Mares v. State*, No. 14-00-01034-CR, 2001 WL 1013578 (Tex. App.—Tex. App.—Houston [14th Dist.] Sept. 6, 2001, pet. ref'd) (not designated for publication), the defendant in a DWI case attempted to impeach one of the police officers involved in his arrest by introducing evidence that the officer was being investigated for perjury. *Id.* at *4. The court of appeals held that the officer was merely under investigation, and that the perjury investigation and the events giving rise to it could not be used to attack his credibility in the present case. *Id.* The same is true here; Krietemeyer was merely under investigation, and appellant has presented nothing to show that such an investigation would have been admissible impeachment evidence at trial.

Because appellant failed to show that the impeachment evidence of the DPS investigation against Kreitemeyer would have been admissible at trial, we conclude the trial court did not abuse its discretion in determining that appellant did not establish a *Brady* violation. For the same reason, the trial court did not err in overruling appellant's motion for new trial on the same grounds.

22

We overrule issues four and five.

## PROSECUTORIAL MISCONDUCT

In his sixth issue on appeal, appellant contends the prosecutor committed "prosecutorial misconduct by falsely informing Appellant in writing that it did not oppose a new trial." After the hearing, the prosecutor acknowledged, "There was a point when we filed that last document that you cited when the State would have agreed to a motion for new trial. We did not agree with the substance that the Defendant put forward in their motion for new trial but would have agreed to a motion for new trial. But since we went ahead with the hearing, we did not agree that a motion for new trial should be granted." From the record, it appears that the State would have agreed to the granting of a motion for new trial without a hearing, but when the trial court required an evidentiary hearing, the State felt that it had to oppose the motion because it did not agree with its substance.

In his brief, appellant cites no authority to support his position that, by deciding to oppose the motion before the evidentiary hearing, the State committed prosecutorial misconduct. Thus, the issue is waived. *See* TEX. R. APP. P. 38.1(i) (stating that "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

And, even if we were to reach the merits and agree that appellant had shown prosecutorial misconduct, we would nonetheless conclude that he failed to show

harm. In his brief, appellant argued that the State's conduct "placed Appellant in the unenvieable position of having been mislead into believing the motion for new trial was unopposed, all which the State fully intended, and then proceeded to oppose the motion at the hearing."

Because no constitutional error is involved in the State "changing its mind" and opposing the motion, we apply the harm standard in TEX. R. APP. P. 44.2(b), and disregard "[a]ny other error, defect, irregularity, or variance that does not affect" appellant's substantial rights. Here, appellant was well-prepared for the evidentiary hearing on the motion for new trial. In fact, counsel served subpoenas on the District Attorney and Assistant District Attorney, both of whom were compelled, over objection by the State, to testify. Appellant called four witnesses who presented testimony relating to the circumstances of the DPS investigation into Krietemeyer's extra jobs and how that information came to be in the possession of the Galveston District Attorney. Appellant also presented numerous documents in support of his motion.

However, appellant provides no information regarding how his conduct of the hearing would have been different had he known earlier of the State's opposition. As such, he had failed to show that his "substantial rights" were affected by the State's decision to oppose the motion.

We overrule issue six.

**CONCLUSION**

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Sharp and Massengale.

Do not publish.  TEX. R. APP. P. 47.2(b).